6/28/2022 1:17:29 PM

# Compare Results

| Old File: | | New File: |
|---|---|---|
| **20-1650.pdf** | versus | **20-1650_new.pdf** |
| **28 pages (167 KB)** | | **28 pages (166 KB)** |
| 6/24/2022 2:52:59 PM | | 6/28/2022 1:16:34 PM |

**Total Changes**

**1**

**Content**

1    Replacements

0    Insertions

0    Deletions

**Styling and Annotations**

0    Styling

0    Annotations

Go to First Change (page 22)

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CONCEPCION *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 20–1650. Argued January 19, 2022—Decided June 27, 2022

Congress passed the Fair Sentencing Act of 2010 to correct the wide disparity between crack and powder cocaine sentencing. Section 2 of that Act increased the amount of crack cocaine needed to trigger a 5-to-40-year sentencing range from 5 grams to 28 grams. §2(a)(2), 124 Stat. 2372. The Fair Sentencing Act did not apply retroactively, but in 2011, the Sentencing Commission amended the Sentencing Guidelines to lower the Guidelines range for crack-cocaine offenses and applied that reduction retroactively for some defendants. In 2018, Congress enacted the First Step Act, authorizing district courts to "impose a reduced sentence" on defendants serving sentences for certain crack-cocaine offenses "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." Pub. L. 115–391, §404(b), 132 Stat. 5222.

In 2007, petitioner Carlos Concepcion pleaded guilty to one count of distributing five or more grams of crack cocaine in violation of 21 U. S. C. §841(a)(1), and he was sentenced in 2009 to 19 years (228 months) in prison. When Concepcion was sentenced, he qualified for sentencing as a "career offender." The career offender provision and other enhancements increased Concepcion's Sentencing Guidelines range from 57 to 71 months to 262 to 327 months. Because Concepcion was sentenced as a career offender, he was not eligible for relief under the Sentencing Commission's 2011 amendment.

In 2019, Concepcion filed a *pro se* motion for a sentence reduction under the First Step Act. He argued that he was serving a sentence for a "covered offense" because §2 of the Fair Sentencing Act "modified" the statutory penalties for his conviction under 21 U. S. C. §841(a)(1). Concepcion contended that retroactive application of the Fair Sentencing Act lowered his Guidelines range from 262 to 327 months to 188 to

235 months. The Government conceded Concepcion's eligibility for relief but opposed the motion, emphasizing that Concepcion's original sentence of 228 months fell within the new Guidelines range of 188 to 235 months, and citing factors in Concepcion's prison record that the Government believed counseled against a sentence reduction. In his reply brief, represented by counsel, Concepcion made two primary arguments in support of a reduced sentence. First, he argued that he would no longer be considered a career offender because one of his prior convictions had been vacated and his remaining convictions would not constitute crimes of violence that trigger the enhancement. Without the enhancement, Concepcion contended that his revised Guidelines range should be 57 to 71 months. Second, Concepcion pointed to postsentencing evidence of rehabilitation.

The District Court denied Concepcion's motion. It declined to consider that Concepcion would no longer qualify as a career offender based on its judgment that the First Step Act did not authorize such relief. App. to Pet. for Cert. 72a. The District Court did not address Concepcion's evidence of rehabilitation or the Government's countervailing evidence of Concepcion's disciplinary record. The Court of Appeals affirmed in a divided opinion, and added to the disagreement among the Circuits as to whether a district court deciding a First Step Act motion must, may, or may not consider intervening changes of law or fact.

*Held*: The First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence. Pp. 6–18.

(a) Federal courts historically have exercised broad discretion to consider all relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them. That discretion also carries forward to later proceedings that may modify an original sentence. District courts' discretion is bounded only when Congress or the Constitution expressly limits the type of information a district court may consider in modifying a sentence. Pp. 6–11.

(1) There is a "long" and "durable" tradition that sentencing judges "enjo[y] discretion in the sort of information they may consider" at an initial sentencing proceeding. *Dean* v. *United States*, 581 U. S. 62, 66. That unbroken tradition also characterizes federal sentencing history. Indeed, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon* v. *United States*, 518 U. S. 81, 113.

Accordingly, a federal judge in deciding to impose a sentence "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States* v. *Tucker*, 404 U. S. 443, 446. Pp. 6–8.

(2) The discretion federal judges hold at initial sentencings also characterizes sentencing modification hearings. The Court in *Pepper* v. *United States*, 562 U. S. 476, found it "clear that when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing." *Id.*, at 490. Accordingly, federal courts resentencing individuals whose sentences were vacated on appeal regularly consider evidence of rehabilitation, or evidence of rule breaking in prison, developed after the initial sentencing. Where district courts must calculate new Guidelines ranges as part of resentencing proceedings, courts have also exercised their discretion to consider nonretroactive Guidelines changes. In some cases, a district court is prohibited from recalculating a Guidelines range to account for nonretroactive Guidelines amendments, but the court may nevertheless find those amendments to be germane when deciding whether to modify a sentence at all, and if so, to what extent. Pp. 8–9.

(3) The only limitations on a court's discretion to consider relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution. See *Pepper*, 562 U. S., at 489, n. 8; *Mistretta* v. *United States*, 488 U. S. 361, 364. Congress has placed such limits where it deems them appropriate. See 18 U. S. C. §§3582(a), 3583(c). Congress has further imposed express statutory limitations on one type of sentencing modification proceeding, expressly cabining district courts' discretion by requiring courts to abide by the Sentencing Commission's policy statements. See also §3582(c)(1)(A) (compassionate release). Pp. 9–11.

(b) Congress in the First Step Act did not contravene well-established sentencing practices. Pp. 11–18.

(1) Nothing in the text and structure of the First Step Act expressly, or even implicitly, overcomes the established tradition of district courts' sentencing discretion. The text of the First Step Act does not so much as hint that district courts are prohibited from considering evidence of rehabilitation, disciplinary infractions, or unrelated Guidelines changes. The only two limitations on district courts' discretion appear in §404(c): A district court may not consider a First Step Act motion if the movant's sentence was already reduced under the Fair Sentencing Act or if the court considered and rejected a motion under the First Step Act. Neither limitation applies here. By its terms, §404(c) does not prohibit district courts from considering any arguments in favor of, or against, sentence modification. In fact, §404(c)

only underscores that a district court is not required to modify a sentence for any reason. "Drawing meaning from silence is particularly inappropriate" in the sentencing context, "for Congress has shown that it knows how to direct sentencing practices in express terms." *Kimbrough* v. *United States*, 552 U. S. 85, 103.

The "as if" clause in §404(b) does not impose any limit on the information a district court can consider in exercising its discretion under the First Step Act. The term "as if" simply enacts the First Step Act's central goal: to make retroactive the changes in the Fair Sentencing Act, necessary to overcome 1 U. S. C. §109, which creates a presumption that Congress does not repeal federal criminal penalties unless it says so "expressly." The "as if" clause also directs district courts to apply the Fair Sentencing Act as if it applied at the time of the commission of the offense, not at the time of the original sentencing, suggesting that Congress did not intend to constrain district courts to considering only the original sentencing record. Thus, the "as if" clause requires district courts to apply the legal changes in the Fair Sentencing Act when recalculating a movant's Guidelines, but it does not limit the information a district court may use to inform its decision whether and how much to reduce a sentence. Pp. 11–14.

(2) Consistent with this text and structure, district courts deciding First Step Act motions regularly have considered evidence of post-sentencing rehabilitation and unrelated Guidelines amendments when raised by the parties. First Step Act movants have amassed prison records of over a decade. See §404(a), 132 Stat. 5222 (requiring the movant to have been sentenced for an offense "committed before August 3, 2010"). Those records are naturally of interest to judges authorized by the First Step Act to reduce prison sentences or even to release movants immediately. Likewise, when deciding whether to grant First Step Act motions and in deciding how much to reduce sentences, courts have looked to postsentencing evidence of violence or prison infractions as probative. Moreover, when raised by the parties, district courts have considered nonretroactive Guidelines amendments to help inform whether to reduce sentences at all, and if so, by how much. Nothing express or implicit in the First Step Act suggests that these courts misinterpreted the Act in considering such relevant and probative information. Pp. 14–16.

(3) The Court therefore holds that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act. When deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' nonfrivolous arguments. See *Golan* v. *Saada*,

Syllabus

596 U. S. \_\_\_, \_\_\_. The district court is not required to articulate anything more than a brief statement of reasons. See *Rita* v. *United States*, 551 U. S. 338, 356.

The broad discretion that the First Step Act affords to district courts also counsels in favor of deferential appellate review. See *Solem* v. *Helm*, 463 U. S. 277, 290, n. 16. Section 404(c) of the First Step Act confers particular discretion because the Act does not "require a court to reduce any sentence." Other than legal errors in recalculating the Guidelines to account for the Fair Sentencing Act's changes, see *Gall* v. *United States*, 552 U. S. 38, 51, appellate review should not be overly searching. Pp. 16–18.

991 F. 3d 279, reversed and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which THOMAS, BREYER, KAGAN, and GORSUCH, JJ., joined. KAVANAUGH, J., filed a dissenting opinion, in which ROBERTS, C. J., and ALITO and BARRETT, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order that
corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 20–1650

CARLOS CONCEPCION, PETITIONER *v.*
UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIRST CIRCUIT

[June 27, 2022]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

There is a longstanding tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the whole person before him or her "as an individual." *Koon* v. *United States*, 518 U. S. 81, 113 (1996). In line with this history, federal courts today generally "exercise a wide discretion in the sources and types of evidence used" to craft appropriate sentences. *Williams* v. *New York*, 337 U. S. 241, 246 (1949). When a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction. *Pepper* v. *United States*, 562 U. S. 476, 492 (2011). Similarly, when a defendant's sentence is set aside on appeal, the district court at resentencing can (and in many cases, must) consider the defendant's conduct and changes in the Federal Sentencing Guidelines since the original sentencing. *Ibid.*

Congress enacted the First Step Act of 2018 against that backdrop. The First Step Act authorizes district courts to reduce the prison sentences of defendants convicted of cer-

tain offenses involving crack cocaine. The Act allows a district court to impose a reduced sentence "as if" the revised penalties for crack cocaine enacted in the Fair Sentencing Act of 2010 were in effect at the time the offense was committed. The question in this case is whether a district court adjudicating a motion under the First Step Act may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion.

The Court holds that they may. It is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained. Nothing in the First Step Act contains such a limitation. Because district courts are always obligated to consider nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them. By its terms, however, the First Step Act does not compel courts to exercise their discretion to reduce any sentence based on those arguments.

The District Court in this case declined to consider petitioner Carlos Concepcion's arguments that intervening changes of law and fact supported his motion, erroneously believing that it did not have the discretion to do so, and the Court of Appeals affirmed. The Court now reverses.

## I

### A

In 2007, Concepcion pleaded guilty to one count of distributing five or more grams of crack cocaine in violation of 21 U. S. C. §841(a)(1) (2006 ed.). Concepcion admitted that he sold 13.8 grams of crack cocaine, and he was sentenced in 2009 to 19 years (228 months) in prison. Two features of his sentencing are relevant here. First, Concepcion was sentenced under a scheme that created a 100-to-1 disparity

between crack-cocaine and powder-cocaine offenders. At the time Concepcion was sentenced, an offense involving five or more grams of crack cocaine resulted in a statutory sentencing range of 5 to 40 years' imprisonment; it required 100 times as much powder cocaine to trigger the same penalties. Second, when Concepcion was initially sentenced, he qualified as a "career offender." The career offender provision, together with other enhancements, increased Concepcion's Guidelines range from 57 to 71 months to 262 to 327 months.

Both of these features of Concepcion's sentencing have since been altered. Just one year after Concepcion was sentenced, Congress passed the Fair Sentencing Act of 2010 to correct the harsh disparities between crack and powder cocaine sentencing. Section 2 of that Act increased the amount of crack cocaine needed to trigger the 5-to-40-year sentencing range from 5 grams to 28 grams. §2(a)(2), 124 Stat. 2372. The Sentencing Commission then retroactively amended the Sentencing Guidelines to lower the Guidelines range for crack-cocaine offenses, but that amendment did not benefit all prisoners serving sentences handed down during the 100-to-1 regime. See United States Sentencing Commission, Guidelines Manual App. C, Amdt. 750 (Supp. Nov. 2011) (USSG). Concepcion was not eligible for retroactive relief under that 2011 Sentencing Commission's amendment because he was sentenced under the career offender enhancement, but he became eligible to have his sentence reduced in 2018, when Congress passed the First Step Act. The First Step Act authorized district courts to "impose a reduced sentence" for qualifying movants "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." Pub. L. 115–391, §404(b), 132 Stat. 5222.

### B

Concepcion filed a *pro se* motion under the First Step Act

in 2019. He argued that he was serving a sentence for a "covered offense" because §2 of the Fair Sentencing Act "modified" the statutory penalties for his conviction under 21 U. S. C. §841(a)(1). Concepcion contended that retroactive application of the Fair Sentencing Act lowered his Guidelines range from 262 to 327 months to 188 to 235 months. The Government conceded Concepcion's eligibility for relief and his calculation of the Guidelines but opposed the motion, emphasizing that Concepcion's original sentence of 228 months fell within the new Guidelines range of 188 to 235 months. While recognizing Concepcion's participation in various programs in prison, the Government detailed "troubling behaviors such as '[f]ighting (12/19/2017); Interfering with Staff (11/15/2012); and Possession of a Weapon'" in Concepcion's prison records that, in the Government's view, counseled against a sentence reduction. Electronic Case Filing in No. 1:07–cr–10197 (Mass.) (ECF), Doc. 78, pp. 4–5, n. 4.

In his reply brief, represented by counsel, Concepcion made two primary arguments in support of a reduced sentence. First, he argued that he would no longer be considered a career offender under the amended Guidelines, because one of his prior convictions had been vacated and his remaining convictions would no longer be considered crimes of violence that trigger the enhancement.[1] Without the career offender enhancement, Concepcion argued that his revised Guidelines range should be 57 to 71 months. Second, Concepcion pointed to postsentencing evidence of rehabilitation. Concepcion highlighted his successfully completed drug and vocational programming, as well as his stable

––––––––

[1] In 2015, this Court held that the Armed Career Criminal Act's residual clause was unconstitutional, see *Johnson* v. *United States*, 576 U. S. 591, prompting the Sentencing Commission to amend the identical clause of the career offender Guideline, see USSG App. C, Amdt. 798 (Supp. Aug. 2016). The Sentencing Commission did not apply the amendment retroactively.

reentry plan. He also submitted a letter from a Bureau of Prisons chaplain who attested to Concepcion's spiritual growth while incarcerated.

The District Court denied Concepcion's motion. It adopted the Government's argument that if the Court "considered only the changes in law that the Fair Sentencing Act enacted, [Concepcion's] sentence would be the same." App. to Pet. for Cert. 71a. The court declined to consider that Concepcion would no longer qualify as a career offender on the ground that the First Step Act "does not authorize such relief." *Id.,* at 72a. In doing so, the District Court adopted the reasoning of the Fifth Circuit, which understood the First Step Act to require a district court to "'plac[e] itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act.'" *Id.,* at 74a (quoting *United States* v. *Hegwood*, 934 F. 3d 414, 418 (CA5 2019)). The District Court did not address Concepcion's evidence of rehabilitation or the Government's countervailing evidence of Concepcion's disciplinary record.

The Court of Appeals affirmed in a divided opinion. The court interpreted the First Step Act as requiring a "two-step inquiry." 991 F. 3d 279, 289 (CA1 2021). At the first step of that inquiry, a district court decides whether a movant should be resentenced at all, considering only the changes wrought by the Fair Sentencing Act. *Ibid.* If the district court answers in the affirmative at the first step, it may then, in its discretion, consider new factual or legal developments in determining how to resentence the movant. *Id.,* at 289–290. Judge Barron dissented, rejecting the panel's bifurcated approach. In his view, the First Step Act requires only one step of analysis, at which district courts have "substantial discretion" to consider evidence of rehabilitation and Guidelines changes. *Id.,* at 293, 309–310.

The Court of Appeals opinion added to the disagreement among the Circuits as to whether a district court deciding a

First Step Act motion must, may, or may not consider inter-
vening changes of law or fact.[2]  This Court granted certio-
rari to resolve this disagreement.  594 U. S. ___ (2021).

## II

"From the beginning of the Republic, federal judges were
entrusted with wide sentencing discretion."  K. Stith & J.
Cabranes, Fear of Judging: Sentencing Guidelines in the
Federal Courts 9 (1998) (Stith & Cabranes).  Federal courts
historically have exercised this broad discretion to consider
all relevant information at an initial sentencing hearing,
consistent with their responsibility to sentence the whole
person before them.  That discretion also carries forward to
later proceedings that may modify an original sentence.
Such discretion is bounded only when Congress or the Con-
stitution expressly limits the type of information a district
court may consider in modifying a sentence.

## A

There is a "long" and "durable" tradition that sentencing
judges "enjo[y] discretion in the sort of information they
may consider" at an initial sentencing proceeding.  *Dean* v.
*United States*, 581 U. S. 62, 66 (2017).[3]  This history dates

—————

[2] Compare *United States* v. *Collington*, 995 F. 3d 347, 355, 360 (CA4
2021) (must consider changed law and facts); *United States* v. *Easter*, 975
F. 3d 318, 325–327 (CA3 2020) (same); *United States* v. *Brown*, 974 F. 3d
1137, 1144–1145 (CA10 2020) (must consider intervening Circuit prece-
dent); *United States* v. *White*, 984 F. 3d 76, 93 (CADC 2020) (must con-
sider changed facts), with *United States* v. *Maxwell*, 991 F. 3d 685, 689
(CA6 2021) (may consider); *United States* v. *Moore*, 975 F. 3d 84, 92, n.
36 (CA2 2020) (same); *United States* v. *Harris*, 960 F. 3d 1103, 1106 (CA8
2020) (same); *United States* v. *Shaw*, 957 F. 3d 734, 741–742 (CA7 2020)
(same), with *United States* v. *Denson*, 963 F. 3d 1080, 1089 (CA11 2020)
(may not consider); *United States* v. *Kelley*, 962 F. 3d 470, 475 (CA9 2020)
(same); *United States* v. *Hegwood*, 934 F. 3d 414, 418–419 (CA5 2019)
(same).

[3] The dissent invokes another background principle: the importance of

back to before the founding: "[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams*, 337 U. S., at 246.  Early state and English courts broadly recognized this discretion.  See, *e.g., Rex* v. *Bunts*, 2 T. R. 683, 100 Eng. Rep. 368 (K. B. 1788) ("[W]hen any defendant shall be brought up for sentence on any indictment" the court shall hear evidence from the prosecution and the defense in determining an appropriate sentence); *State* v. *Summers*, 98 N. C. 702, 705, 4 S. E. 120, 121 (1887) ("It was competent for [the trial judge] to hear such evidence as he might deem necessary and proper to aid his judgment and discretion in determining the punishment to be imposed"); *State* v. *Reeder*, 79 S. C. 139, 141, 60 S. E. 434, 435 (1908) (rejecting claim that trial court erred in considering aggravating evidence at sentencing, and explaining that "[t]he circuit judge merely permitted himself to be informed as to the character of the accused and the circumstances of the crime, so that he might be able to exercise his discretion intelligently and pronounce a just sentence").

That unbroken tradition characterizes federal sentencing history as well.  "Federal judges exercising sentencing discretion have always considered a wide variety of aggravating and mitigating factors relating to the circumstances of both the offense and the offender."  Stith & Cabranes 14. Indeed, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a

––––––––––

"finality of criminal judgments."  *Post*, at 2 (opinion of KAVANAUGH, J.). No one doubts the importance of finality.  Here, however, the Court interprets a statute whose very purpose is to reopen final judgments.

unique study in the human failings that sometimes miti-
gate, sometimes magnify, the crime and the punishment to
ensue." *Koon*, 518 U. S., at 113; see, *e.g., United States* v.
*Randall*, 27 F. Cas. 696, 708 (No. 16,118) (DC Ore. 1869)
(considering the defendant's "former good reputation" in
imposing sentence); *United States* v. *Nye*, 27 F. Cas. 210,
211 (No. 15,906) (CC Mass. 1855) (considering "palliating
circumstance[s]," including that the defendants were "so-
ber, and fit for duty," in imposing sentence); *Lyon's Case*, 15
F. Cas. 1183, 1185 (No. 8,646) (CC Vt. 1798) (considering
the "reduced condition of [the defendant's] estate" in impos-
ing sentence). Accordingly, a federal judge in deciding to
impose a sentence "may appropriately conduct an inquiry
broad in scope, largely unlimited either as to the kind of
information he may consider, or the source from which it
may come." *United States* v. *Tucker*, 404 U. S. 443, 446
(1972).

## B

The discretion federal judges hold at initial sentencings
also characterizes sentencing modification hearings. Rely-
ing on *Williams* and *Koon*, the Court in *Pepper* found it
"clear that when a defendant's sentence has been set aside
on appeal and his case remanded for resentencing, a district
court may consider evidence of a defendant's rehabilitation
since his prior sentencing." 562 U. S., at 490. *Pepper*
reached that conclusion in light of the "federal sentencing
framework" that allows sentencing judges to consider the
"'fullest information possible concerning the defendant's
life and characteristics.'" *Id.,* at 488, 490.

Accordingly, federal courts resentencing individuals
whose sentences were vacated on appeal regularly consider
evidence of rehabilitation developed after the initial sen-
tencing. See, *e.g., United States* v. *Rodriguez*, 2020 WL
2521551, *5 (SDNY, May 18, 2020) (considering the mo-

vant's "exemplary conduct during a lengthy period of incarceration"); *United States* v. *Raifsnider*, 2020 WL 1503527, *3 (D Kan., Mar. 30, 2020) (considering that the movant "has completed his GED, taken hundreds of hours of programming offered by the Bureau of Prisons, and is taking college classes"). Similarly, district courts in resentencing proceedings frequently consider evidence of violence and rule breaking in prison. See, *e.g., United States* v. *Riley*, 785 Fed. Appx. 282, 285 (CA6 2019) (considering a "'series of disciplinary violations while in the Bureau of Prisons'"); *United States* v. *Diaz*, 486 Fed. Appx. 979, 980 (CA3 2012) (considering "infractions while in prison, *e.g.,* possession of marijuana").

Where district courts must calculate new Guidelines ranges as part of resentencing proceedings, courts have also considered unrelated Guidelines changes in their discretion. See, *e.g., United States* v. *Frates*, 896 F. 3d 93, 101–102 (CA1 2018) (distinguishing between recalculating a Guidelines range based on nonretroactive intervening changes of law and considering those changes as a matter of "discretion to select an appropriate sentence"); *United States* v. *Taylor*, 648 F. 3d 417, 425 (CA6 2011) ("[T]he district court can consider subsequent amendments to the Guidelines for purposes of fashioning an appropriate sentence [at resentencing]"); *United States* v. *Gilmore*, 599 F. 3d 160, 166–167 (CA2 2010) (considering subsequently updated Guidelines as "evidence of society's judgment of the seriousness of [the movant's] offense"). In many cases, a district court is prohibited from recalculating a Guidelines range in light of nonretroactive Guidelines amendments, but the court may find those amendments to be germane when deciding whether to modify a sentence at all, and if so, to what extent.

## C

The only limitations on a court's discretion to consider

any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution. See *Pepper*, 562 U. S., at 489, n. 8 ("Of course, sentencing courts' discretion . . . is subject to constitutional constraints"); *Mistretta* v. *United States*, 488 U. S. 361, 364 (1989) ("[T]he scope of judicial discretion with respect to a sentence is subject to congressional control").

Congress is not shy about placing such limits where it deems them appropriate. At an initial sentencing, Congress has provided generally that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense" when deciding what sentence to impose. 18 U. S. C. §3661. Congress has, however, expressly prohibited a district court in crafting an initial sentence from considering a defendant's need for rehabilitation in support of a prison sentence. See §3582(a); *Tapia* v. *United States*, 564 U. S. 319, 328 (2011).

In other aspects of sentencing, Congress also has expressly limited district courts to considering only certain factors. For example, in determining whether to include a term of supervised release, and the length of any such term, Congress has expressly precluded district courts from considering the need for retribution. See §3583(c); *id.*, at 326.

Congress has further imposed express statutory limitations on one type of sentencing modification proceeding. Section 3582(c)(2) provides that

> "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

For those proceedings, Congress expressly cabined district
courts' discretion by requiring courts to abide by the Sen-
tencing Commission's policy statements.  See also
§3582(c)(1)(A) (permitting district courts to grant compas-
sionate release in certain circumstances if "such a reduction
is consistent with applicable policy statements issued by
the Sentencing Commission").[4]

### III
### A

Congress in the First Step Act simply did not contravene
this well-established sentencing practice.  Nothing in the
text and structure of the First Step Act expressly, or even
implicitly, overcomes the established tradition of district
courts' sentencing discretion.

The first section of the First Step Act, §404(a), sets out
who is eligible for relief:

> "In this section, the term 'covered offense' means a
> violation of a Federal criminal statute, the statutory
> penalties for which were modified by section 2 or 3 of
> the Fair Sentencing Act of 2010 . . . that was committed
> before August 3, 2010."  132 Stat. 5222.

The second section, §404(b), describes what relief is avail-
able for the parties who meet §404(a)'s criteria:

> "A court that imposed a sentence for a covered of-
> fense may, on motion of the defendant, the Director of
> the Bureau of Prisons, the attorney for the Govern-
> ment, or the court, impose a reduced sentence as if sec-
> tions 2 and 3 of the Fair Sentencing Act of 2010 . . .

_____

[4] The dissent brushes aside this venerable tradition of discretion by
emphasizing the differences between initial sentencings and sentence
modification proceedings. See *post,* at 2–3.  Of course there are differ-
ences between the two, but the feature common to both is that only Con-
gress and the Constitution limit the historic scope of district courts' dis-
cretion.

were in effect at the time the covered offense was committed." 132 Stat. 5222.

The third section, §404(c), places two explicit limitations on available relief:

"No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." 132 Stat. 5222.

The text of the First Step Act does not so much as hint that district courts are prohibited from considering evidence of rehabilitation, disciplinary infractions, or unrelated Guidelines changes. The only two limitations on district courts' discretion appear in §404(c): A district court may not consider a First Step Act motion if the movant's sentence was already reduced under the Fair Sentencing Act or if the court considered and rejected a motion under the First Step Act. Neither of those limitations applies here. By its terms, §404(c) does not prohibit district courts from considering any arguments in favor of, or against, sentence modification. In fact, §404(c) only underscores that a district court is not required to modify a sentence for any reason. "Drawing meaning from silence is particularly inappropriate" in the sentencing context, "for Congress has shown that it knows how to direct sentencing practices in express terms." *Kimbrough* v. *United States*, 552 U. S. 85,

103 (2007).[5]

Nor did Congress hide any limitations on district courts' discretion outside of §404(c). Section 404(b) does not erect any additional such limitations. The term "as if" simply enacts the First Step Act's central goal: to make retroactive the changes in the Fair Sentencing Act. That language is necessary to overcome 1 U. S. C. §109, which creates a presumption that Congress does not repeal federal criminal penalties unless it says so "expressly." To defeat the presumption established by this statute, Congress needed to make clear that the Fair Sentencing Act applied retroactively. Notably, the "as if" clause requires a district court to apply the Fair Sentencing Act as if it applied at the time of the commission of the offense, not at the time of the original sentencing. Had Congress intended to constrain district courts to consider only the record as it existed at the time of the original sentencing, Congress would have written the "as if" clause to refer to that sentencing, not the commission of the offense. Thus, the language Congress enacted in the First Step Act specifically requires district courts to apply the legal changes in the Fair Sentencing Act when calculating the Guidelines if they chose to modify a

——————

[5] The dissent demands that Congress expressly specify the scope of information that a district court can consider in a sentencing modification proceeding. See *post,* at 3. This gets it backward. The consistent historic norm is that a district court can consider any information in crafting a new or modified sentence, subject to congressional or constitutional limits. See *supra,* at 6–11. Moreover, the dissent's reliance on §3582(c)(1)(B), *post,* at 3, misses the point. Section 3582(c)(1)(B) is simply a gateway provision that refers to whichever statute "expressly permit[s]" the sentencing modification. *Ibid.* It does not impose any substantive or procedural limits on a district court's discretion; for those details, it refers to the statute authorizing the sentence modification. See *United States* v. *Triestman*, 178 F. 3d 624, 629 (CA2 1999) ("'[S]ubsection (c)(1)(B) simply *notes* the authority to modify a sentence *if modification is permitted by statute*'" (quoting S. Rep. No. 98–225 (1984)).

sentence.[6]  The "as if" clause does not, however, limit the information a district court may use to inform its decision whether and how much to reduce a sentence.

## B

Consistent with this text and structure, district courts deciding First Step Act motions regularly have considered evidence of postsentencing rehabilitation and unrelated Guidelines amendments when raised by the parties.  By definition, First Step Act movants have amassed prison records of over a decade.  See §404(a), 132 Stat. 5222 (requiring the movant to have been sentenced for an offense "committed before August 3, 2010").  Those records are naturally of interest to judges authorized by the First Step Act to reduce prison sentences or even to release movants immediately.  See, *e.g., United States* v. *Crawford*, 483 F. Supp. 3d 378, 381 (ND W. Va. 2020) (considering that the movant earned his GED in prison, obtained a carpentry certification through a local community college, and was sanctioned for only "two minor write-ups" in the nine years preceding his motion); *United States* v. *Henderson*, 399 F. Supp. 3d 648, 656 (WD La. 2019) (considering that the movant "ha[d] not seen his children in eight years," that he had "possible employment opportunities . . . upon his release," and that he "ha[d] received only two incident reports" while incarcerated); *United States* v. *Mitchell*, 2019 WL 2647571, *8 (D DC, June 27, 2019) (considering that the movant "incurred

--------

[6]A district court cannot, however, recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act.  Rather, the First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense.  That Guidelines range "anchor[s]" the sentencing proceeding. *Peugh* v. *United States*, 569 U. S. 530, 541 (2013).  The district court may then consider postsentencing conduct or nonretroactive changes in selecting or rejecting an appropriate sentence, with the properly calculated Guidelines range as the benchmark.

no disciplinary infractions over his last fourteen years in prison" and that the movant would no longer be considered a career offender based on an intervening change of law).

Likewise, when deciding whether to grant First Step Act motions and in deciding how much to reduce sentences, courts have looked to postsentencing evidence of violence or prison infractions as probative. See, *e.g., United States* v. *Rose*, 841 Fed. Appx. 328, 329 (CA2 2021) (affirming partial denial of motion where the district court relied on the movant's "lengthy history of prison disciplinary infractions, which included many recent violent infractions"); *United States* v. *Barlow*, 544 F. Supp. 3d 491, 505 (NJ 2021) (considering, in denying motion, that the movant was disciplined in prison seven times, including "three times for possessing a dangerous weapon," "once for possessing marijuana," and "once for fighting"); *United States* v. *Slutzkin*, 2019 WL 5696122, \*8 (Conn., Nov. 4, 2019) (considering in denying motion the movant's "behavior once incarcerated [as] perhaps the greatest concern to the Court," in light of "25 disciplinary citations while in state incarceration and six more in federal prison").[7]

Moreover, when raised by the parties, district courts have considered nonretroactive Guidelines amendments to help inform whether to reduce sentences at all, and if so, by how much. See, *e.g., United States* v. *Coachman*, 2020 WL 6939890, \*3 (ND Fla., June 22, 2020) (considering that the movant "would not qualify for career offender status" at the time of his sentence modification hearing); *United States* v.

---

[7] In the dissent's view, each of these District Courts erred in considering evidence outside of the original sentencing record. See *post,* at 1–2. Instead, the dissent's interpretation would require a district court adjudicating a First Step Act motion to decide whether, and by how much, to reduce a sentence based only on the original sentencing record. But again, the text of the First Step Act does not require that counterfactual procedure.

*Frederick*, 2020 WL 555302, \*4 (WD Pa., Feb. 4, 2020) (considering "the fact that [the movant] would not qualify as a career offender under the current version of the career offender provisions . . . as a factor favoring the exercise of the discretionary relief that may be awarded"); *United States* v. *Newton*, 2019 WL 1007100, \*5 (WD Va., Mar. 1, 2019) (considering that the movant, "if he were sentenced today," would no longer qualify for career offender status). Nothing express or implicit in the First Step Act suggests that these courts misinterpreted the Act in considering such relevant and probative information.[8]

C

The Court therefore holds that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act.

It follows, under the Court's sentencing jurisprudence, that when deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments.

---

[8] The dissent contends that permitting a district court to consider non-retroactive Guidelines amendments will create a disparity between First Step Act-eligible movants and other defendants. See *post,* at 3–4. To reiterate, the First Step Act does not require a district court to recalculate a movant's Guidelines in any respect other than applying the Fair Sentencing Act. See n. 6, *supra.* In any event, it is a feature of our sentencing law that different judges may respond differently to the same sentencing arguments. Cf. *Kimbrough* v. *United States*, 552 U. S. 85, 110 (2007) (permitting, but not requiring, district courts to consider certain policy arguments at sentencing). Moreover, disparities are always unavoidable when some, but not all, defendants are permitted to move for modifications of an original sentence. Even the dissent's interpretation would create disparities between First Step Act movants and defendants eligible for a sentence reduction under the 2011 retroactive crack-cocaine Guidelines, see *supra,* at 3, because the Commission permitted the latter group to argue postsentencing developments, see USSG §1B1.10, comment, n. 1(B)(iii).

It is well established that a district court must generally consider the parties' nonfrivolous arguments before it. See *Golan* v. *Saada*, 596 U. S. \_\_\_, \_\_\_ (2022) (slip op., at 11). Of course, a district court is not required to be persuaded by every argument parties make, and it may, in its discretion, dismiss arguments that it does not find compelling without a detailed explanation. Nor is a district court required to articulate anything more than a brief statement of reasons. See *Rita* v. *United States*, 551 U. S. 338, 356 (2007). Nothing in the First Step Act contravenes those background principles.

When it comes to that reasoned explanation, the First Step Act "'leaves much . . . to the judge's own professional judgment.'" *Chavez-Meza* v. *United States*, 585 U. S. \_\_\_, \_\_\_ (2018) (slip op., at 3) (quoting *Rita*, 551 U. S., at 356). The First Step Act does not "require courts to expressly rebut each argument" made by the parties. *United States* v. *Maxwell*, 991 F. 3d 685, 694 (CA6 2021). In exercising its discretion, the court is free to agree or disagree with any of the policy arguments raised before it. Cf. *Kimbrough*, 552 U. S., at 111. All that the First Step Act requires is that a district court make clear that it "reasoned through [the parties'] arguments." 991 F. 3d, at 693.

The broad discretion that the First Step Act affords to district courts also counsels in favor of deferential appellate review. As a general matter, "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence." *Solem* v. *Helm*, 463 U. S. 277, 290, n. 16 (1983). Section 404(c) of the First Step Act confers particular discretion, clarifying that the Act does not "require a court to reduce any sentence." Other than legal errors in recalculating the Guidelines to account for the Fair Sentencing Act's changes, see *Gall* v. *United States*, 552 U. S. 38, 51 (2007), appellate review should not be overly searching.

Put simply, the First Step Act does not require a district

court to accept a movant's argument that evidence of reha-
bilitation or other changes in law counsel in favor of a sen-
tence reduction, or the Government's view that evidence of
violent behavior in prison counsels against providing relief.
Nor does the First Step Act require a district court to make
a point-by-point rebuttal of the parties' arguments.  All that
is required is for a district court to demonstrate that it has
considered the arguments before it.

*          *          *

The First Step Act does not require a district court to be
persuaded by the nonfrivolous arguments raised by the par-
ties before it, but it does require the court to consider them.
The contrary judgment of the Court of Appeals for the First
Circuit is reversed, and the case is remanded for further
proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 20–1650

CARLOS CONCEPCION, PETITIONER *v.*
UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIRST CIRCUIT

[June 27, 2022]

JUSTICE KAVANAUGH, with whom THE CHIEF JUSTICE, JUSTICE ALITO, and JUSTICE BARRETT join, dissenting.

Beginning in the mid-1980s, Congress prescribed higher criminal sentences for crack-cocaine offenses than for powder-cocaine offenses involving the same amounts of cocaine. In 2010, Congress enacted the Fair Sentencing Act to narrow that crack/powder disparity by lowering the sentencing ranges for certain crack-cocaine offenses. But the Act lowered those crack-cocaine sentencing ranges only *prospectively*—that is, for crack-cocaine offenders who were sentenced on or after the Act's effective date of August 3, 2010.

The First Step Act of 2018 changed that. It provided that the 2010 Fair Sentencing Act's lower crack-cocaine sentencing ranges would also apply *retroactively* to offenders who were sentenced before August 3, 2010. But how to implement that change? Congress did not mandate a specific across-the-board reduction to all pre-August 3, 2010, crack-cocaine sentences. Instead, the First Step Act authorized district courts, on motion, to "impose a reduced sentence as if" the lower sentencing ranges for crack-cocaine offenses "were in effect at the time the covered offense was committed." §404(b), 132 Stat. 5222.

The straightforward question in this case is whether district courts in First Step Act sentence-modification proceedings may reduce sentences based not only on the changes to

the crack-cocaine sentencing ranges, but also on other *un-related* legal or factual changes that have occurred since the original sentencing.  For many crack-cocaine offenders who were sentenced before August 3, 2010, the most significant such change is a *non-retroactive* 2016 Sentencing Guidelines amendment that substantially altered the career-offender guideline and would significantly lower many of those offenders' Guidelines ranges.  See United States Sentencing Commission, Guidelines Manual, App. C, Amdt. 798 (Nov. 2021).

The Court today concludes that district courts in First Step Act sentence-modification proceedings may reduce sentences based not only on the changes to the crack-cocaine sentencing ranges, but also on other unrelated legal or factual changes that have occurred since the original sentencing.

I respectfully disagree.  The text of the First Step Act authorizes district courts to reduce sentences based only on changes to the crack-cocaine sentencing ranges, not based on other unrelated changes that have occurred since the original sentencing.  In other words, the First Step Act directs district courts to answer one fundamental question: What would the offender's sentence have been if the lower crack-cocaine sentencing ranges had been in effect back at the time of the original sentencing?

The Court sidesteps the text of the Act and equates sentence-modification proceedings with plenary sentencing proceedings.  But as this Court has recognized, there are "fundamental differences between sentencing and sentence-modification proceedings." *Dillon* v. *United States*, 560 U. S. 817, 830 (2010).  The finality of criminal judgments is essential to the operation of the criminal justice system.  See *Calderon* v. *Thompson*, 523 U. S. 538, 555–556 (1998); *United States* v. *Frady*, 456 U. S. 152, 166 (1982).  Once a federal sentence becomes final, a court may alter that sentence "only in very limited circumstances." *Pepper*

v. *United States*, 562 U. S. 476, 501–502, n. 14 (2011). As relevant here, Congress has made clear that courts may reduce "an imposed term of imprisonment to the extent" such a reduction is "*expressly permitted by statute.*" 18 U. S. C. §3582(c)(1)(B) (emphasis added).

The First Step Act states that the district court "may . . . impose a reduced sentence as if" the lower sentencing ranges for crack-cocaine offenses "were in effect at the time the covered offense was committed." §404(b), 132 Stat. 5222. By its terms, the First Step Act authorizes consideration only of the lower sentencing ranges for crack-cocaine offenses. The First Step Act does not authorize consideration of unrelated intervening legal or factual changes. Indeed, the relevant provision of the First Step Act does not mention changes other than the lower sentencing ranges for crack-cocaine offenses. Therefore, the First Step Act does not "expressly permi[t]" reductions based on those unrelated intervening changes. 18 U. S. C. §3582(c)(1)(B).

In support of its conclusion that district courts in First Step Act sentence-modification proceedings may consider other unrelated changes, the Court cites *Pepper* and similar decisions. See *ante,* at 8–9. But those decisions involved resentencings, not sentence-modification proceedings. See *Pepper*, 562 U. S., at 486–487. Those cases therefore do not support the Court's approach here. To reiterate, for sentence-modification proceedings, Congress has declared that courts may reduce a sentence only as "expressly permitted by statute." 18 U. S. C. §3582(c)(1)(B). And the First Step Act does not authorize consideration of unrelated intervening legal or factual changes since the original sentencing.

The Court's disregard of the text of the First Step Act and §3582(c)(1)(B) will create significant and inexplicable sentencing inequities. Consider the following. First Step Act sentence-modification proceedings are available only for offenders who were sentenced before August 3, 2010. So a

crack-cocaine offender such as Concepcion who was sentenced before August 3, 2010, may now obtain the benefit of the non-retroactive 2016 change to the career-offender guideline. But a crack-cocaine offender who was sentenced from August 3, 2010, to July 31, 2016, will not be able to obtain the benefit of the non-retroactive 2016 change to the career-offender guideline. What sense does that make? That anomalous outcome will amount to a "haphazard windfall" for crack-cocaine offenders sentenced before August 3, 2010. *United States* v. *Lancaster*, 997 F. 3d 171, 180 (CA4 2021) (Wilkinson, J., concurring in judgment).

Still more inequities will ensue because the Court affords district courts blanket discretion to choose between two vastly different approaches to First Step Act proceedings. To be sure, the Court properly notes that district courts must begin a First Step Act proceeding by calculating the new Guidelines range based solely on the changes to the crack-cocaine sentencing ranges. See *ante,* at 14, n. 6. So far, so good. But district courts then have free rein either to take into account—or to completely disregard—other intervening changes since the original sentencing.

Needless to say, different district courts will choose different approaches. The Court's decision will therefore produce massive inequities in how the First Step Act is implemented on the ground. Those inequities further illustrate why today's decision is wrong as a matter of statutory interpretation: Congress enacted the First Step Act to provide a targeted retroactive reduction in crack-cocaine sentencing ranges, not to unleash a sentencing free-for-all in the lower courts.

The Court's disregard of the text of the First Step Act is especially audacious because the Act was a heavily negotiated and vigorously debated piece of legislation. The Act reflects a compromise among competing interests. Not for the first time in a sentencing case, the Court's decision today unravels the legislative compromise reflected in the

statutory text. The Court in effect green-lights district courts, if they wish, to make the 2016 amendment to the career-offender guideline retroactive in First Step Act proceedings—even though neither Congress nor the Sentencing Commission has made that amendment retroactive. Perhaps the Court's decision represents better sentencing policy. Perhaps not. But under the Constitution's separation of powers, this Court may not simply rewrite the First Step Act as the Court thinks best.

In sum, I would conclude that the First Step Act authorizes district courts to reduce a sentence based on changes to the crack-cocaine sentencing ranges, but not based on other unrelated legal or factual changes since the original sentencing. The Court holds otherwise. Therefore, I respectfully dissent.