RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0283p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellant*,

    *v.*

EDWARD DALE (23-1050); GENE POLK (23-1069); JOHN GORDON (23-1070); GREGORY BROWN (23-1071),

        *Defendants-Appellees*.

Nos. 23-1050/1069/1070/1071

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:92-cr-81127-32—David M. Lawson, District Judge.

Argued: August 6, 2024

Decided and Filed: October 14, 2025

Before: WHITE, STRANCH, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Jessica Currie, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellant. Fabián Rentería, OFFICE OF THE FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellee Dale. John Minock, CRAMER & MINOCK PLC, Ann Arbor, Michigan, for Appellee Polk. Nicole L. Smith, SMITH MIHAS, Wyandotte, Michigan, for Appellee Gordon. Laura Danielle Mazor, OFFICE OF THE FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellee Brown. **ON BRIEF:** Jessica Currie, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellant. Fabián Rentería, OFFICE OF THE FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellee Dale. John Minock, CRAMER & MINOCK PLC, Ann Arbor, Michigan, for Appellee Polk. Nicole L. Smith, SMITH MIHAS, Wyandotte, Michigan, for Appellee Gordon. Laura Danielle Mazor, Benton Martin, OFFICE OF THE FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellee Brown.

    WHITE, J., delivered the opinion of the court in which STRANCH, J., concurred. MURPHY, J. (pp. 21–32), delivered a separate dissenting opinion.

---

**OPINION**

---

HELENE N. WHITE, Circuit Judge.   The government appeals the reduction of Defendants' sentences, from life imprisonment to terms of years, under the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  Defendants were initially sentenced for a conspiracy involving both powder and crack cocaine and several homicides.  The government argues that the First Step Act did not authorize the district court to reduce Defendants' sentences for the homicide convictions because the homicide convictions are not "covered offenses" under § 404 of the Act and were not part of sentencing packages, and that the reduced sentences for all the convictions are substantively unreasonable in any event.  Because we conclude that the First Step Act allows resentencing on some, but not all, non-covered offenses, specifically only those that are part of a sentencing package, we **VACATE** the sentences imposed on resentencing and **REMAND** for further proceedings consistent with this opinion.

**I.**

**A.**

The "Best Friends" gang (the "Gang") was a drug-distribution organization based in Detroit, Michigan, that operated from the mid-1980s to the mid-1990s.  Members of the Gang committed for-hire homicides and drive-by shootings to maintain control of the Gang's territory, eliminate competition, and punish buyers for failing to pay drug debts.  Edward Dale, Gene Polk, John Gordon, and Gregory Brown (collectively, "Defendants") each held both distribution and enforcement roles in the Gang.

In 1995, Dale, Polk, Gordon, and Brown were indicted as part of a sweeping criminal case against the Gang.  Each was charged with conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1) and 846. Each was also indicted on several counts of intentional killing in furtherance of a continuing criminal enterprise, in violation of 21 U.S.C. § 848(e)(1)(A)—Dale and Polk were charged with three counts each, and Gordon and Brown were charged with one count each—and several

counts of using or carrying a firearm in relation to a drug-trafficking crime, in violation of 18 US.C. § 924(c).

Juries found Defendants guilty on all counts in two separate trials. Consistent with the United States Sentencing Guidelines (the "Guidelines") in effect at the time, the district court sentenced all Defendants to concurrent terms of life imprisonment on the drug-conspiracy and homicide convictions and statutorily mandated term-of-years sentences for the § 924(c) convictions, to be served consecutively.[1] Defendants appealed their convictions and sentences, and this court affirmed. *See United States v. Polk*, 182 F.3d 919, at *1 (6th Cir. 1999) (unpublished table decision) (affirming Polk's, Gordon's, and Dale's sentences and convictions); *United States v. Brown*, 221 F.3d 1336, at *1 (6th Cir. 2000) (unpublished table decision) (affirming Brown's sentence and conviction).

**B.**

Years after Defendants were sentenced and their appeals were concluded, Congress reformed the sentencing scheme for federal offenses involving crack. Section 2 of the Fair Sentencing Act of 2010 reduced the sentencing disparities between certain crack and powder cocaine offenses. 21 U.S.C. §§ 841(b)(1)(A)(iii), (B)(iii), 960(b)(1)(C), (2)(C). Eight years later, Section 404 of the First Step Act authorized a court to "impose a reduced sentence" on a defendant with a qualifying sentence "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222.

In 2019, Dale, Polk, Gordon, and Brown filed motions for sentence reductions under Section 404 of the First Step Act. The government did not respond to their motions. The district court denied Gordon's and Brown's motions later in 2019, reasoning that they were ineligible for

---

[1]The district court sentenced Dale on April 16, 1996; Polk on March 27, 1996; Gordon on April 16, 1996; and Brown on May 19, 1997. The now-advisory Sentencing Guidelines were mandatory at that time. *See United States v. Booker*, 543 U.S. 220, 227 (2005) ("[T]wo provisions of the Sentencing Reform Act of 1984 (SRA) that have the effect of making the Guidelines mandatory must be invalidated in order to allow the statute to operate in a manner consistent with congressional intent."); *United States v. Gates*, 48 F.4th 463, 475 (6th Cir. 2022) ("At the time [the Supreme Court decided *Booker*], the Sentencing Guidelines were considered mandatory . . . . Ultimately, the Supreme Court held that the Sentencing Guidelines were advisory." (discussing *Booker*, 543 U.S. 220)).

relief because their Guidelines ranges were calculated based on the Guidelines for First Degree Murder (§ 2A1.1), but did not rule on Dale's and Polk's motions. Gordon appealed and Brown moved for reconsideration.

The district court then ordered briefing on Brown's motion for reconsideration. Brown's supplemental brief "invoke[d] the sentencing package doctrine to correct his entire sentence," arguing that he could be resentenced for his non-covered offenses along with his covered sentences because they formed part of the same sentencing package. R. 2437, PID 19290 n.4, 19292. The Government's response argued that (1) the homicide offense did not meet the statutory definition of a "covered offense" under the First Step Act and the court could not reduce the sentence for that offense, and (2) under the concurrent-sentence doctrine, because Brown was otherwise subject to a life sentence, the court should not reduce the sentence on Brown's eligible drug-conspiracy offense.

Meanwhile, in January 2021, this court vacated in part the district court's order denying Gordon's First Step Act motion. *See United States v. Gordon*, No. 19-1739, at 4 (6th Cir. Jan. 14, 2021). We rejected Gordon's argument that intentional killing in furtherance of a continuing criminal enterprise under 21 U.S.C. § 848(e)(1)(A) "is a 'covered offense' for purposes of [sentence-reduction eligibility under] the First Step Act." *Id.* at 3. But we concluded that "Gordon was, in fact, eligible for a sentencing reduction under the First Step Act for the sentence that he received on Count 1"—the drug conspiracy. *Id.* Because "[t]he district court erred in concluding otherwise, . . . we vacate[d], only as to Count 1, the district court's order denying Gordon's motion for a sentence reduction under the First Step Act and remand[ed] for further proceedings." *Id.* at 3–4 (emphases omitted).

In July 2022, the district court granted Defendants' motions in part. It rejected the government's argument, based on the concurrent-sentence doctrine, that the district court should not resentence on the covered charges because "resentencing the [D]efendants on [the conspiracy count] would have no effect whatsoever on their overall sentences because their concurrent life sentence[s] on other counts would remain in place." R. 2541, PID 20530. The district court explained that "[i]n Gordon's appeal, [the Sixth Circuit] made clear that his intentional killing conviction did not preclude the [c]ourt from considering whether he otherwise is eligible for a

sentence reduction for his section 841 drug offense." *Id.* The district court further stated that it "has the discretion to reduce the total sentence when a covered offense is involved." *Id.* at PID 20531. It thus concluded that Defendants were eligible for relief on all charges and ordered the Probation Department to provide updated information for future resentencing hearings.

In November 2022, the government filed an omnibus sentencing memorandum in advance of the resentencing hearings in which it contested Defendants' eligibility for relief under the First Step Act. Although it "acknowledge[d]" the district court's previous ruling that it would revisit the total sentence, the government argued "that the authority to order a sentence reduction here is limited in several respects." R. 2568, PID 20662. It asserted that this court "issued only a limited remand" in Gordon's appeal and reducing his "total sentence would therefore violate the mandate rule." *Id.* at PID 20662–63.

The government also addressed Brown's "sentencing package" argument for the first time. The government argued that the sentences for the non-covered homicide offenses were not eligible for relief on a "sentencing package" theory because "courts are not authorized to reduce sentences for stand-alone non-covered offenses, like the homicides and § 924(c) offenses here, none of which [were] grouped with the drug conspiracy." *Id.* at PID 20664. It did not argue against the sentencing-package doctrine generally. The government conceded that "[t]he phrase 'impose a reduced sentence' clarifies that courts are not limited to reducing 'the sentence' for the covered offense but may also reduce the sentence of interdependent non-covered offenses that, together with the covered offense, form a sentencing package." *Id.* But the government argued that the doctrine did not apply to Defendants' cases because the non-covered homicide charges were not properly considered part of the same package. Finally, it argued that the Guidelines and the sentencing factors under 18 U.S.C. § 3553(a) still favored life imprisonment.

The district court held individual resentencing hearings for each Defendant in December 2022. When the court questioned why the government had not responded to Defendants' First Step Act motions or moved for reconsideration of the court's eligibility determinations in advance of the hearings, the government said that it would not "be appropriate . . . to reveal the internal deliberations of the office," R. 2572, PID 20852, and that it had "understood" that "only respond[ing] to post-judgment motions if [] ordered to" was "a practice . . . that is acceptable in

this court," R. 2571, PID 20814–15.  The court said that it stood by its earlier determination that Defendants were eligible for resentencing on the other counts because "a resentencing can take into account both covered and noncovered offenses," R. 2572, PID 20868, and, in any event, the government forfeited the issue by failing to object to Defendants' eligibility for resentencing in either a response to the First Step Act motions or a motion for reconsideration.

Ultimately, the district court reduced Defendants' sentences for the drug-conspiracy and homicide convictions from life imprisonment to terms of years but left the statutorily mandated § 924(c) sentences undisturbed.  Dale was resentenced to a total term of forty-five years' imprisonment:  twenty years on Count 1 (conspiracy to possess and distribute); twenty years each on Counts 12, 13, and 15 (intentional killing), to run concurrently to each other and to the sentence on Count 1; five years on Count 14 (use or carrying of a firearm), to run consecutively to the previously stated sentences; and twenty years on Count 16 (use or carrying of a firearm), to run consecutively to the previously stated sentences.  Polk received a seventy-year sentence: twenty years on Count 1 (conspiracy to possess and distribute); twenty-five years on Counts 4, 6, and 8 (intentional killing), to be served concurrently to each other and to the drug-conspiracy sentence; five years on Count 5 (use or carrying of a firearm), to be served consecutively to the previously stated sentences; twenty years on Count 7 (use or carrying of a firearm), to be served consecutively to the previous sentences; and twenty years on Count 9 (use or carrying of a firearm), to be served consecutively to the other sentences.  Gordon was sentenced to twenty-five years' imprisonment:  twenty years each on Counts 1 (conspiracy to possess and distribute) and 8 (international killing), to run concurrently, and five years on Count 9 (use or carrying of a firearm), to run consecutively to the sentences on Counts 1 and 8.  Finally, Brown received time served for the 27 years he spent in prison.  The district court also sentenced each Defendant to five years of supervised release following their custodial sentences.

Four days after Gordon's hearing, and before the court entered amended judgments, the government moved for reconsideration of Gordon's reduced sentence on the ground that he received a sentence less than time served and, as a result, had credited time toward any future imprisonment for violating the terms of his supervised release.  The court denied the motion, stating that it lacked the authority to reconsider the sentence because Gordon's resentencing

hearing had concluded.  The court further commented on, and rejected, the government's arguments raised in its omnibus sentencing memorandum and the resentencing hearings concerning the mandate rule and the court's authority under the First Step Act to reduce the sentences on Defendants' homicide convictions.

The district court entered amended judgments; the government appealed; and we consolidated the appeals.

## II.

Defendants first argue that the government waived or forfeited its right to challenge on appeal Defendants' eligibility for sentencing relief on their homicide convictions.  Forfeiture and waiver "have different meanings and different consequences." *United States v. Noble*, 762 F.3d 509, 528 (6th Cir. 2014).  "Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 n.1 (2017) (cleaned up).  Waiver "extinguishes the ability to challenge any error." *Noble*, 762 F.3d at 528.  In contrast, "we can review forfeited arguments in exceptional circumstances." *United States v. Bowers*, No. 22-6095, 2024 WL 366247, at *2 n.3 (6th Cir. Jan. 31, 2024) (citing *Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999)).  When a party forfeits an issue by, for example, failing to raise it before the district court in a timely manner, we review only for plain error. *See United States v. Woods*, 61 F.4th 471, 481 (6th Cir. 2023); Fed. R. Crim. P. 52(b).

Neither waiver nor forfeiture applies here.  Waiver generally requires that a party "either (1) take some step to 'expressly abandon' [an argument] or (2) fail to raise it in its first brief on appeal." *United States v. Russell*, 26 F.4th 371, 375 (6th Cir. 2022).  The former does not apply here—Defendants point to no express words or conduct by the government in the district court or on appeal disclaiming its right to contest Defendants' eligibility for relief.  Nor does the latter apply—the government asserted in its opening appellate brief that the district court erred in finding Defendants eligible for reductions in their homicide sentences.

The forfeiture question presents a closer call.  The government did not respond to Defendants' motions seeking relief under the First Step Act.  After the district court ordered the

government to respond to Brown's motion for reconsideration, the government argued only that Defendants' homicide offenses were not eligible for relief as covered offenses under the First Step Act, and that the concurrent-sentence doctrine rendered relief inappropriate.  The response did not address Brown's other theory of eligibility for relief on the homicide offense—the sentencing-package theory.  The government had another chance to bring any alleged error to the court's attention in a motion for reconsideration, *see* E.D. Mich. LCrR 12.1; E.D. Mich. LR 7.1(h)(2), but did not avail itself of that opportunity by filing a motion for reconsideration explaining why the court should not apply the sentencing-package doctrine to resentence Defendants.

The first time the government addressed whether Defendants were eligible for relief under the sentencing-package doctrine, which was raised in Brown's supplemental brief in support of his motion for reconsideration, was in its omnibus sentencing memorandum.  It did not file that memorandum until after we had remanded the case to the district court and the district court had already held, while granting Defendants' motions, that Defendants were eligible because the court "has the discretion to reduce the total sentence when a covered offense is involved," R. 2541, PID 20531.  At that point, the parties and the Probation Department had begun preparing for the resentencing hearings.  And when, at the resentencing hearings, the government reiterated the argument from its omnibus sentencing memorandum that Defendants were ineligible under the sentencing-package doctrine, the district court said that (1) it stood by the eligibility determination it had made when granting Defendants' motions, and (2) the government had forfeited the issue by not addressing the sentencing-package argument earlier.

We conclude, nevertheless, that the government did not forfeit the right to contest Defendants' eligibility for sentencing relief on their homicide convictions.  We generally find "no forfeiture 'where the district court nevertheless addressed the merits of the issue.'" *United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011) (quoting *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707 (D.C. Cir. 2009)).  In denying the government's motion to reconsider Gordon's sentence, the district court also briefly discussed the merits of the government's arguments concerning the court's authority to reduce the sentences on their homicide convictions.

We acknowledge that the district court was, in its own words, merely "comment[ing]" on the government's eligibility arguments at this point in the proceedings.  R. 2583, PID 21033.  Indeed, the eligibility issue was no longer pending before the court because the court had already held that it had the authority to resentence on the homicide offenses when it granted Defendants' motions for resentencing.  Further, these comments were made in the district court's written order denying the government's motion for reconsideration of Gordon's sentence, in which the government had not raised the eligibility issue.  The court ruled in the very same order that it lacked the authority to reconsider Defendants' sentences, given that the resentencing hearings had already concluded.  *See United States v. Dotz*, 455 F.3d 644, 648 (6th Cir. 2006) ("In the sentencing context, there is simply no such thing as a 'motion to reconsider' an otherwise final sentence . . . .").

Still, the forfeiture rule is prudential in nature and "justified by two main policy goals": easing appellate review by ensuring the district court takes the first pass and preventing surprise to other litigants.  *Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 1228 (6th Cir. 2022) (quoting *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528 (6th Cir. 2014)).  Here, the district court considered Defendants' eligibility for relief on the sentences for their homicide convictions in its July 2022 opinion, thus easing our review.  The issue also "has been fully briefed on appeal." *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 588 n.4 (6th Cir. 2022).  Although it occurred late in the proceedings, the government's raising eligibility in its sentencing memorandum mitigates any surprise from the issue's appearance on appeal.  Thus, we will address the merits of the government's arguments.

**III.**

The government raises an additional issue specific to Gordon.  It argues that the mandate from Gordon's appeal challenging the district court's earlier denial of his First Step Act motion barred the district court from reducing Gordon's homicide sentence on remand.  Reviewing the scope of the mandate de novo, *see United States v. Parks*, 700 F.3d 775, 777 (6th Cir. 2012), we disagree.

The mandate rule, a species of the law-of-the case doctrine, *see In re Purdy*, 870 F.3d 436, 442 (6th Cir. 2017), "requires lower courts to adhere to the commands of a superior court," *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994). The lower court cannot reconsider any issue that the higher appeals court "expressly or impliedly decided" in an earlier appeal. *Id.*

> A non-exhaustive list of circumstances under which a prior appeal may resolve an issue implicitly includes: "(1) resolution of the issue was a necessary step in resolving the earlier appeal; (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal; and (3) the issue is so closely related to the earlier appeal its resolution involves no additional consideration and so might have been resolved but unstated."

*Purdy*, 870 F.3d at 443 (quoting *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 169 F. App'x 976, 986 (6th Cir. 2006)).

A lower court must stay within the bounds of a remand order. "Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). In contrast, remand orders without such limitations are deemed general and "give district courts authority to address all matters as long as remaining consistent with the remand." *Id*. Determining the scope of the order involves consideration of the purposes of the mandate rule—encouraging finality and judicial economy—as well as the spirit of the mandate and the circumstances of the higher court's opinion. *See United States v. O'Dell*, 320 F.3d 674, 679–80 (6th Cir. 2003).

Nothing in this court's remand order in Gordon's prior appeal expressly limited the district court to considering relief only as to the conspiracy conviction. Although we limited our vacatur to the district court's determination that the conspiracy offense did not meet the statutory definition of "covered offense," we did not similarly limit the remand order. This distinction matters. In *O'Dell*, for example, we gave illustrative examples of a general remand order ("reverse the district court's determination that [a defendant] was not an armed career criminal under []§ 924(e) and remand for resentencing") and a limited remand order ("[t]he judgments of conviction are vacated and the cases are remanded to the district court for hearings on the suppression issue"). 320 F.3d at 680 (third alteration in original) (citations omitted). The

language here—"vacate, only as to Count 1, the district court's order denying Gordon's motion for a sentence reduction under the First Step Act and remand for further proceedings," No. 19-1739, at 4—falls in the general-remand category. And without an express limitation on the remand, the district court could consider eligibility for relief on the sentence for Gordon's homicide conviction so long as the court did not reconsider an issue decided in the appeal—e.g., that homicide is not a covered offense.

On that point, our decision that Gordon's homicide offense did not qualify as a "covered offense" did not impliedly preclude the district court from determining that the sentence for Gordon's homicide conviction was eligible for relief on some other ground. "Because the Fair Sentencing Act modified the statutory penalties for Gordon's § 841 drug offense," we reasoned, "Gordon was, in fact, eligible for a sentencing reduction under the First Step Act for the sentence that he received on Count 1. The district court erred in concluding otherwise." *Id.* at 3 (citations omitted). Determining whether the sentence for Gordon's homicide conviction is eligible for relief on some alternative ground was not "a necessary step" in resolving whether the drug conspiracy and homicide are covered offenses. *Purdy*, 870 F.3d at 443 (internal quotation marks omitted). And subsequently deciding whether there are alternative grounds for eligibility for relief did not "abrogate the prior decision" because the first decision did not address the sentencing-package issue. *Id.* (internal quotation marks omitted). Additionally, that issue was not "so closely related to the earlier appeal" that "no additional consideration" was warranted. *Id.* (internal quotation marks omitted). Thus, the mandate from Gordon's appeal was no bar to the district court's consideration on remand of alternative grounds in support of relief under the First Step Act.

## IV.

We finally consider whether the First Step Act authorized the district court to reduce Defendants' sentences for their homicide convictions, for which they were convicted and sentenced concurrently with the covered drug-conspiracy conviction. Interpreting the scope of statutory authority de novo, *see Consumers' Rsch. v. FCC*, 67 F.4th 773, 783 (6th Cir. 2023), we conclude that a district court has the discretion to reduce a sentence imposed for a non-covered offense when it is part of a sentencing package with a covered offense. Because the decision

below is unclear regarding whether and how the homicide sentences formed sentencing packages with the covered drug-conspiracy sentence, and because the district court is in the best position to address such a sentencing issue in the first instance, we remand for further consideration within this interpretation of the statutory framework.

**A.**

To start, we note that Defendants appear to argue that the First Step Act authorizes a district court to reduce any and all of a defendant's sentences—for both covered and non-covered offenses—if the defendant is resentenced on at least one covered offense. They contend that nothing in the statutory text, which authorizes a court to "impose a reduced sentence," Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222, limits relief to the covered offense only. In support of this position, they note that the First Step Act imposed only two express limitations on eligibility for relief: a court may not reduce a sentence if it previously (1) imposed or reduced the sentence under sections 2 and 3 of the Fair Sentencing Act, or (2) denied a First Step Act motion on the merits. *See id.* § 404(c). And, they argue, Congress did not expressly limit a court's sentence-reduction authority to only the sentence imposed for a covered offense. Defendants further note the wide discretion that courts typically have in the sentencing context. All this, they say, supports interpreting the First Step Act to allow a court to reduce a sentence imposed for a non-covered offense if a resentencing on another offense is authorized by the First Step Act, regardless whether the two offenses are connected.

This gloss conflicts with the plain meaning of section 404(b). That section provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222. Under Defendants' logic, because there is no modifier on "sentence" in the phrase "impose a reduced sentence," a court could reduce a sentence for *any* offense, even one not part of the same judgment of conviction, or even one not part of the same criminal case, as long as it is also resentencing on a covered offense at the same time.

Moreover, Defendants' interpretation of the statutory language ignores the stated purpose of the resentencing:  to ensure that the new sentence imposed is imposed "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed."  It is difficult to see how interpreting the First Step Act to give district courts unbounded authority to reduce any sentence for any offense constitutes resentencing as if sections two and three of the Fair Sentencing Act were in effect at the time of the offense.  It would make no difference if the First Step Act were in effect when a defendant committed unrelated offenses because the sentencing court would have no reason to consider the changes effected by the Act.

Further, the discretion that generally applies to sentencing in our judicial system does not persuade us to interpret section 404(b) otherwise.  Discretion comes into play once eligibility for sentencing or resentencing is established.  *See United States v. Lancaster*, 997 F.3d 171, 174 (4th Cir. 2021) ("[An] eligibility determination is not a function of discretion but simply of applying the explicit criteria set forth in the First Step Act."); *cf. United States v. Boulding*, 960 F.3d 774, 778 (6th Cir. 2020) ("Boulding's legal eligibility [under the First Step Act] for a sentence reduction is reviewed de novo."); *United States v. Curry*, 606 F.3d 323, 327 (6th Cir. 2010) ("[T]he district court's decision to modify a sentence under § 3582(c)(2) is discretionary and, as such, is reviewed by this Court for abuse of discretion. . . . If, however, the district court . . . concludes that it lacks the authority to reduce a defendant's sentence under the statute, the district court's determination that the defendant is ineligible for a sentence reduction is a question of law that is reviewed *de novo*.").

**B.**

We agree, however, with Defendants' alternative, less sweeping argument in favor of the sentencing-package doctrine[2]—a position also supported by the government in its brief, though the government maintains that the doctrine does not apply to this case[3]—that section 404(b)'s

---

[2]Dale Br. 21–24; Polk Br. 12; Gordon Br. 12–13; Brown Br. 27–30.

[3]Gov't Br. 25–27 ("[T]he Department of Justice supports the . . . sentencing-package theory[,] []but that approach still did not permit a reduction of the defendants' murder sentences . . . . [The] murders [being] committed to further the defendants' drug conspiracy says nothing about whether th[ose] sentences . . . were somehow interdependent with the crack sentences.") (original emphasis omitted).

sentence-reduction authority encompasses cases falling under the sentencing-package doctrine. Under that doctrine, a district court can reduce a sentence for a non-covered offense when it was "packaged" with a covered offense for sentencing purposes. To date, this court has assumed this position in several unpublished cases. *See United States v. Walker*, No. 20-1555, 2021 U.S. App. LEXIS 11681, at *2–4 (6th Cir. April 20, 2021); *United States v. Smith*, No. 20-1833, 2022 U.S. App. LEXIS 1103, at *3–6 (6th Cir, Jan. 13, 2022) (Order). We now formally adopt it because we conclude that "both the text and context of the statute," *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016), support an interpretation of section 404 that encompasses the sentencing-package doctrine.

As the Seventh Circuit has explained in setting forth the sentencing-package doctrine, "[t]he operative question is whether there is reason to think that, at the time of sentencing, the two sentences were interdependent." *United States v. Curtis*, 66 F.4th 690, 694 (7th Cir. 2023) It is not difficult to imagine situations where recognition of such interdependence is consistent with the First Step Act. For example, a district court sentencing on an offense involving a mandatory consecutive sentence and a second offense is permitted to take the mandatory sentence into consideration when setting the sentence on the second offense. *Dean v. United States*, 581 U.S. 62, 67 (2017). And once a district court settles on a sentence for one offense, the remaining sentences are chosen in that context, often to craft a global sentence appropriately in line with the sentencing factors. *Curtis*, 66 F.4th at 694 ("There could be other indicia in the record, such as statements made at the time of sentencing or evidence that the court intended to issue one global sentence of an appropriate length."). The sentencing-package doctrine recognizes this interrelatedness. Accordingly, if one consecutive sentence is set aside, a longer sentence on a second offense may be appropriate. *Pasquarille v. United States*, 130 F.3d 1220, 1222 (6th Cir. 1997) (holding that, in the 28 U.S.C. § 2255 context, when one sentence is set aside and "there is [] a 'sentencing package[,]' . . . the [district] court [has] jurisdiction and authority to reevaluate the entire aggregate sentence to ensure that the defendant receives the appropriate sentence on the remaining count").

Similarly, our sentencing methodology recognizes that "[s]ome offenses that may be charged in multiple-count indictments are so closely intertwined with other offenses that

conviction for them ordinarily would not warrant increasing the guideline range." U.S. Sent'g Guidelines Manual ch. 3, pt. D, introductory cmt. (U.S. Sent'g Comm'n 2023). Thus, these offenses are grouped for sentencing. Where one part of the group is subject to resentencing, it makes little sense not to also resentence the defendant on the remainder of the grouped offenses, the original sentences for which were dependent on the counts now eligible for resentencing. *Curtis*, 66 F.4th at 694.

None of this is to say that a district court is required to reduce the sentence on every charge in the sentencing package. In the First Step Act context, a district court retains discretion to determine that, although a defendant may be eligible for relief, the circumstances render relief inappropriate. *United States v. Flowers*, 963 F.3d 492, 498 (6th Cir. 2020) ("While a defendant may be eligible for relief under the First Step Act, this does not mean that he is entitled to it. . . . Thus, the First Step Act ultimately leaves the choice whether to resentence to the district court's sound discretion." (cleaned up)). A court might reach that conclusion if, for example, it determines that the total sentencing package originally imposed continues to be appropriate for the combination of offenses. It is no leap to consider the situation of a defendant convicted of a drug-conspiracy offense for which the Guidelines recommend a life sentence who is then sentenced to a concurrent term of life on a second offense because the drug-conspiracy sentence already provides for a life sentence. If faced with a motion under the First Step Act, the sentencing court might conclude that, notwithstanding the defendant's eligibility for relief, a life sentence continues to be appropriate, especially considering the second offense, which was also punishable by life, or it might conclude that it contemplated a single global sentence that would have been different had the Fair Sentencing Act been in effect.

Unlike Defendants' other proffered interpretation discussed above, this interpretation fits neatly within the plain meaning of section 404(b). The ordinary meaning of "sentence" includes "the punishment imposed on a criminal wrongdoer." *Sentence*, Black's Law Dictionary (12th ed. 2024). The "punishment" a court imposes conceptually can encompass imprisonment imposed for multiple convictions. Further, the first use of "sentence" in section 404—"sentence for a covered offense"—is broad enough to include a sentence imposed (1) for only a covered offense, and (2) for both a covered and non-covered offense.

That Congress did not include further textual limitations to the relevant "sentence" in section 404(b) is also telling. *See Concepcion v. United States*, 597 U.S. 481, 495–97 (2022) ("Nothing in the text and structure of the First Step Act expressly, or even implicitly, overcomes the established tradition of district courts' sentencing discretion. . . . Nor did Congress hide any limitations on district courts' discretion outside of § 404(c)."). Congress has limited the reach of sentencing provisions in other statutes to a sentence imposed for a single offense. *See, e.g.*, 18 U.S.C. § 371 ("If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor."). Yet, in § 404(b), Congress did not restrict district courts to reducing sentences imposed only for covered offenses, rather than those imposed for both covered and non-covered offenses. *Concepcion*, 597 U.S. at 496 ("The only two limitations on district courts' discretion appear in § 404(c): A district court may not consider a First Step Act motion if the movant's sentence was already reduced under the Fair Sentencing Act or if the court considered and rejected a motion under the First Step Act."). And it is an established principle of statutory interpretation that because Congress can say what it means, the absence of explicit restrictions is meaningful. As the Supreme Court has stated when interpreting another statute—18 U.S.C. § 924(c)(1), which imposes penalties for "us[ing] or carr[ying] a firearm" "during and in relation to any crime of violence or drug trafficking crime"—"[h]ad Congress intended the narrow[er] construction [requiring proof that the defendant used the firearm as a weapon, as opposed to bartering it, when committing a crime of violence or drug-trafficking crime] . . . , it could have so indicated. It did not, and we decline to introduce that additional requirement on our own." *Smith v. United States*, 508 U.S. 223, 229 (1993).

This interpretation comports with our interpretation of analogous texts. In *Pasquarille*, this court interpreted a similar resentencing provision in 28 U.S.C § 2255. 130 F.3d at 1222. Section 2255 states that, if a defendant is successful in demonstrating that his sentence was improper, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Like § 404 of the First Step Act, § 2255 does not explicitly authorize the court to vacate any sentence beyond the sentence on the challenged count, nor does it explicitly

restrict the court's ability to vacate and resentence to the sentence on the challenged count. *Pasquarille* presented the question whether, once a defendant's sentence on one count of a two-count indictment has been vacated pursuant to § 2255, the defendant should be resentenced on the second count as well.  130 F.3d at 1222.

We reasoned that the sentence for the second count was intertwined with the sentence for the first count, and likely would have been higher without the second count.  *Id.*  As a result, we concluded:

> This Court has established that where a defendant is sentenced on multiple counts under the sentencing guidelines, there is often a "sentencing package" where sentences imposed on the multiple counts are interdependent. . . . It is clear that the 924(c) offense and the underlying offense are interdependent, and must be considered as components of a single comprehensive sentencing plan. . . . Therefore, § 2255 gives the court jurisdiction and authority to reevaluate the entire aggregate sentence to ensure that the defendant receives the appropriate sentence on the remaining count.  Accordingly[,] the district court was correct in concluding that it has jurisdiction to resentence the defendant or to correct his sentence pursuant to § 2255.

*Id.* (citations omitted).  The same reasoning applies here.

This interpretation also comports with "the backdrop of existing law," *McQuiggin v. Perkins*, 569 U.S. 383, 398 n.3 (2013), and "the practical realities" of sentencing, *Abramski v. United States*, 573 U.S. 169, 183 (2014).  Under the well-established sentencing-package doctrine, a reviewing court sustaining an attack "on some but not all of the counts of conviction . . . may vacate the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)."  *Greenlaw v. United States*, 554 U.S. 237, 253 (2008).  It is reasonable to conclude that Congress intended to retain the discretion of sentencing courts to modify sentencing packages that include both covered and non-covered offenses.

Other circuits have adopted this view.  The Seventh Circuit has held that, "[i]f the district court has imposed a single, integrated sentence that blends punishment for a covered offense with punishment for a non-covered offense, . . . the court has the discretion to consider resentencing for an offense that is not covered by the First Step Act."  *Curtis*, 66 F.4th at 694.

"Excluding non-covered offenses . . . would, in effect, impose an extra-textual limitation on the Act's applicability." *United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020). And "consideration of the term of imprisonment for a non-covered offense comports with the manner in which sentences are imposed. Sentences for covered offenses are not imposed in a vacuum, hermetically sealed off from sentences imposed for non-covered offenses." *Id.* at 611.

The Fourth Circuit agrees with this interpretation. In concluding that section 404(b) contemplates consideration of the sentencing-package doctrine, the court noted the broad discretion in, and practicalities of, sentencing and resentencing; the First Step Act's purpose of undoing a racially disparate sentencing scheme; and concerns regarding imposing an extra-textual limitation on section 404. *See United States v. Richardson*, 96 F.4th 659, 665–67 (4th Cir. 2024).

The Eighth Circuit appears to have adopted the sentencing-package doctrine as well, although without detailed explanation. It noted that "a live controversy exist[ed]" in a First Step Act appeal involving a single conspiracy to distribute both crack and powder cocaine, despite the defendant's concurrent sentences for covered and non-covered offenses, because "his case involve[d] a sentencing package" and the First Step Act did not limit the authority to reduce a sentence solely "to defendants who were sentenced only for a covered offense." *United States v. Spencer*, 998 F.3d 843, 845 n.1 (8th Cir. 2021); *see also id.* ("As discussed, a modification of the [sentence for the] crack-cocaine object [of the conspiracy] could permit a sentence reduction on the [sentence for the] powder-cocaine object [of the conspiracy].").

To be sure, some circuits have held that relief under section 404 does not extend to non-covered offenses under any circumstances. *See United States v. Young*, 998 F.3d 43, 55 (2d Cir. 2021); *United States v. Gladney*, 44 F.4th 1253, 1262 (10th Cir. 2022); *United States v. Baptiste*, 834 F. App'x 547, 550 (11th Cir. 2020). Although we respect these contrary decisions, we find them unpersuasive.

The Second Circuit's *Young* decision was based on its earlier decision in *United States v. Martin*, 974 F.3d 124 (2d Cir. 2020). *See* 998 F.3d at 55. And *Martin*, in turn, rested on a conclusion that "[s]entences are imposed for specific convictions" and "[t]he fact that multiple

sentences may be aggregated for administrative purposes does not authorize a court to treat those sentences as an undivided whole."  974 F.3d at 130.  However, given that, as a practical matter, courts craft global sentences, we find this reasoning unconvincing, and indeed our circuit has already rejected the same reasoning in other contexts.  *See  Pasquarille*, 130 F.3d at 1222.  Further, the Second Circuit in *Martin* arguably backtracked from its conclusion later in the same opinion, appearing to accept a form of the sentencing-package doctrine, albeit not by name.  *See* 974 F.3d at 135 n.11 (noting that a "defendant may be able to obtain a sentencing reduction that has the effect of reducing his sentence for other grouped offenses").

The Tenth Circuit's decision in *Gladney* similarly rested on its prior decision in *United States v. Mannie*, 971 F.3d 1145 (10th Cir. 2022).  *See* 44 F.4th at 1261–62.  *Mannie* concluded that the defendant lacked standing to seek relief under the First Step Act on redressability grounds, given that he was serving concurrent sentences for covered and non-covered offenses.  *See* 971 F.3d at 1153–54.  Yet *Mannie* did not address the sentencing-package issue in concluding that the defendant's "concurrent sentences cannot be modified by the 2018 [First Step Act]."  *Id.* at 1153.

Finally, the Eleventh Circuit concluded in an unpublished decision that section 404 does not contemplate sentence reductions in sentencing packages.  *See Baptiste*, 834 F. App'x at 550.  "[D]istrict courts still lack the inherent authority to modify a term of imprisonment except to the extent that a statute expressly permits," it reasoned, and "the First Step Act[] does not authorize the district court to conduct a plenary or *de novo* resentencing."  *Id.* (cleaned up).  But plenary resentencing—one that is "absolute" or "unqualified," *Plenary*, Merriam-Webster, https://perma.cc/FV6H-S5X7, and akin to an original sentencing proceeding—is distinct from reducing the sentence on a non-covered offense that is packaged with a covered offense, and the court did not explain how the text or context of the First Step Act bars resentencing on a non-covered offense under such a theory.

Simply put, as the government concedes, the First Step Act's text and context favor an interpretation permitting a court to reduce a sentence for a non-covered offense if that sentence was packaged with the sentence for a covered offense.  Although some circuits disagree on this

issue, we find the reasoning of courts adopting a sentencing-package interpretation more persuasive.

**C.**

Having determined that the sentencing-package doctrine applies to First Step Act cases, we find ourselves doubtful that the doctrine applies here. Although the district court determined that it had the authority under the sentencing-package doctrine to resentence on the homicide offenses, it did not explain how each Defendant's sentences fell within that doctrine. Still, because the district court's limited explanation is partially due to the government's failure to timely address the sentencing-package issue, we remand to permit the district court to fully address whether the sentencing-package doctrine truly applies here.

**V.**

For the foregoing reasons, we **VACATE** the district court's sentences imposed on resentencing and **REMAND** for further proceedings consistent with this opinion.

————————————

**DISSENT**

————————————

MURPHY, Circuit Judge, dissenting. Congress passed the First Step Act to reduce the sentences for nonviolent drug offenders who received harsher punishments because they sold crack (rather than powder) cocaine. Yet the defendants in these four appeals argue that the Act also permits them to get out of their life sentences for violent murders. I would reject this claim outright—not remand for further consideration. I thus respectfully dissent.

I

In the 1980s, Congress passed a sentencing law for drug offenses that tied a defendant's minimum sentence to the quantity of drugs involved. *See Terry v. United States*, 593 U.S. 486, 488–89 (2021). This sentencing law punished crack-cocaine offenses more harshly than powder-cocaine offenses: a much lower quantity of crack cocaine triggered the same minimum sentence as a much higher quantity of powder cocaine. *See id.* at 489. A defendant would face a 5-year mandatory minimum for distributing only 5 grams of crack cocaine (as compared to 500 grams of powder cocaine), and a defendant would face a 10-year mandatory minimum for distributing only 50 grams of crack cocaine (as compared to 5 kilograms of powder cocaine). *See id.*

Congress eventually came to see this disparate treatment as excessive. *See id.* at 491. In 2010, it passed the Fair Sentencing Act to increase the quantity of crack cocaine required to trigger the mandatory minimum sentences. *See id.* To trigger a 5-year mandatory minimum today, a defendant's offense must involve 28 grams of crack cocaine. *See id.* And to trigger the 10-year minimum, the defendant's offense must involve 280 grams. *See id.* But this change did not apply retroactively to defendants who had already received one of these minimums for distributing the lower quantities. *See United States v. Blewett*, 746 F.3d 647, 650 (6th Cir. 2013) (en banc).

That is where the First Step Act comes in. Congress passed this Act in 2018 to (among other things) make the Fair Sentencing Act's changes retroactive. *See Terry*, 593 U.S. at 491. Section 404(b) permits district courts to reduce a defendant's sentence for a "covered offense":

>A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.

Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018).  Section 404(a) defines "covered offense" to mean an offense whose "statutory penalties" were modified by the two relevant sections of the Fair Sentencing Act: "In this section, the term 'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." *Id.* § 404(a).

Caselaw has now clarified how to approach motions for a reduced sentence under the First Step Act.  Courts must first determine, as a legal matter, whether defendants are *eligible* for relief because they committed a "covered offense"—that is, one whose statutory penalties were changed by the Fair Sentencing Act.  *See Terry*, 593 U.S. at 492–95.  For eligible defendants, courts must then decide, as a discretionary matter, whether to reduce their sentence.  *See Concepcion v. United States*, 597 U.S. 481, 496–501 (2022).  We have subdivided this second stage into its own two steps—one legal and the other discretionary.  *See United States v. Caver*, 101 F.4th 422, 427 (6th Cir. 2024).  Courts must first recalculate a defendant's guidelines range using only the Fair Sentencing Act's changes, not other legal and factual changes since the original sentencing.  *See id.* (quoting *Concepcion*, 597 U.S. at 498 n.6).  Using this guidelines range as a benchmark, courts must then choose a reduction under a discretionary balancing of all relevant information.  *See id.*

The defendants in these four appeals (Edward Dale, Gene Polk, John Gordon, and Gregory Brown) belonged to the violent "Best Friends" gang in Detroit, Michigan.  *United States v. Brown*, 2000 WL 876382, at *1, *3 (6th Cir. June 20, 2000); *United States v. Polk*, 1999 WL 397922, at *1 (6th Cir. June 2, 1999).  They committed three sets of crimes.  First, they conspired to possess with the intent to distribute cocaine, in violation of 21 U.S.C. § 846.  Second, they committed (or assisted) one or more intentional killings in furtherance of a continuing criminal enterprise, in violation of 21 U.S.C. § 848(e)(1)(A).  Third, they committed

one or more offenses of using or carrying a firearm in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c).

Each defendant received a separate punishment for each offense. Dale received a life sentence for the drug conspiracy, three life sentences for his three murders, and 25 years' imprisonment for his two § 924(c) convictions. Polk received one life sentence for the drug conspiracy, three life sentences for his three murders, and 45 years' imprisonment for his three § 924(c) convictions. Gordon and Brown both received a life sentence for the drug conspiracy, a life sentence for their one murder, and 5 years' imprisonment for their one § 924(c) conviction.

After Congress passed the First Step Act, the defendants moved for sentence reductions. All agree that their drug convictions qualified as "covered offenses" eligible for relief. But the district court went further—much further. The court read the Act as giving it discretion to reduce *not just* the life sentences for these covered drug offenses *but also* the life sentences for the noncovered murder offenses. It thus reduced *all* their life sentences (while keeping their § 924(c) sentences intact). The court reduced Dale's four life sentences down to 20 years each (to run concurrently with each other). And the court reduced Polk's life sentence for the drug conspiracy to 20 years and his three life sentences for murder to 25 years (also to run concurrently). So Dale received a total of 45 years' imprisonment and Polk received a total of 70 years' imprisonment after adding their consecutive § 924(c) sentences. The court reduced Gordon's two life sentences down to 20 years each, so he received a total of 25 years' imprisonment when including his § 924(c) sentence. And the court reduced Brown's sentence to "time served" for all offenses.

II

The government appeals, arguing that the First Step Act did not permit the district court to reduce the life sentences for the defendants' murder convictions. These appeals thus all pose the same question: When, if ever, may a defendant who committed a "covered offense" obtain a reduced sentence for a noncovered offense as well? In my view, the answer is clear: Never.

Start with the First Step Act's text. Recall that it allows a "court that imposed a sentence for a covered offense" to "impose a reduced sentence as if" the Fair Sentencing Act was "in

effect at the time the covered offense was committed." § 404(b), 132 Stat. at 5222. What does § 404(b) mean when it says that a court may "impose a reduced sentence"? Someone who looked at that phrase *in isolation* might ask: for which offense? The law uses an indefinite article ("a") and does not expressly identify the offense whose sentence may be reduced. Does the text allow a court to reduce the sentence only for a covered offense? Does it permit the court to reduce other sentences imposed in a case with multiple counts? How about other sentences imposed on the same defendant in other cases? Or any sentence the court has ever imposed on any defendant?

Section 404(b)'s full context eliminates this uncertainty. The subsection starts by identifying a specific sentence for a specific offense ("A court that imposed *a sentence* for *a covered offense*"). It then uses the word "sentence" a second time ("may impose a reduced *sentence*") and refers to "the covered offense" a second time ("at the time *the covered offense* was committed"). An ordinary person who reviewed this full text would connect its two usages of "sentence" by reading the second one to refer back to the first—that is, to the sentence for *a covered offense*. Section 404(b)'s use of the singular ("a sentence") reiterates this view. That word choice would "seem to suggest" that Congress had a "single" sentence in mind: the sentence for the covered offense that § 404(b) mentions twice. *Niz-Chavez v. Garland*, 593 U.S. 155, 161 (2021).

This reading still requires us to consider what the word "sentence" means. That word—a legal term of art—can refer either to "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty" or to "the punishment imposed on a criminal wrongdoer" (such as "a sentence of 20 years in prison"). *Black's Law Dictionary* 1569 (10th ed. 2014). If the word meant "judgment," I could see the argument that the First Step Act covers *all* the prison terms for multiple offenses listed in the final judgment. Under that reading, a court could reduce the total prison term listed in a single written judgment (or sentence) that contained covered and noncovered offenses. But this reading strikes me as unnatural. Courts generally equate the sentence with the judgment only in cases addressing when criminal defendants have the right to appeal. *See, e.g.*, *Corey v. United States*, 375 U.S. 169, 174 (1963). But the First Step Act has nothing to do with appeals.

The second definition—"the punishment imposed on a criminal wrongdoer"—better fits § 404(b). *Black's Law Dictionary*, *supra*, at 1569. In fact, federal sentencing laws and rules generally treat the word "sentence" as the punishment. They, for example, identify four types of sentences (that is, punishments): probation, fine, imprisonment, and supervised release. *See Tapia v. United States*, 564 U.S. 319, 326 (2011); 18 U.S.C. §§ 3551(b), 3583. And they view the "judgment" that memorializes the "sentence" and the "sentence" itself as distinct things. *See* Fed. R. Crim. P. 32(k)(1); *United States v. Shaw*, 139 F.4th 548, 552 (6th Cir. 2025).

Once we combine these two interpretive conclusions (that a court may reduce a sentence only for "a covered offense" and that "sentence" means punishment), § 404(b) forecloses the defendants' argument. All agree that the punishment the district court imposed for their covered drug offenses was the single term of life imprisonment. It did not impose the other life terms as punishment for that offense. It instead imposed those life sentences for their noncovered murder convictions. So the First Step Act did not permit the court to reduce these noncovered sentences.

A background "sentencing practice" confirms this view. *Concepcion*, 597 U.S. at 495. Before the 1987 reforms that created the Sentencing Guidelines, judges sometimes imposed one *general sentence* for multiple convictions in a multicount case. *See* 3 Charles A. Wright & Sarah N. Welling, *Federal Practice and Procedure* § 551, at 325–26 (5th ed. 2022). Although courts uniformly found this general sentence "unsatisfactory," a split existed on its validity (as long as the sentence did not exceed the maximum punishment for all counts). *Benson v. United States*, 332 F.2d 288, 290 (5th Cir. 1964); *see* J.C. Vance, Annotation, *Propriety of General Sentence*, 91 A.L.R.2d 511, Westlaw (database updated 2025); *Laing v. United States*, 145 F.2d 111, 112 (6th Cir. 1944) (per curiam). But this debate disappeared after the 1987 reforms. Those reforms did away with general sentences. *See* 3 Wright & Welling, *supra*, § 551, at 327. The guidelines instead instruct district courts to impose a *specific* sentence for each *specific* count of conviction. *See* U.S.S.G. § 5G1.2(b)–(c) & cmt. 1; *see also United States v. Martorano*, 697 F.3d 216, 219 (3d Cir. 2012); *United States v. Woodard*, 938 F.2d 1255, 1256–57 (11th Cir. 1991) (per curiam).

When Congress passed the First Step Act, it presumably knew that federal law required courts to impose a specific sentence for each offense. *Black's Law Dictionary*, *supra*, at 1570; *see Hewitt v. United States*, 145 S. Ct. 2165, 2173 (2025). Yet Congress chose to permit district

courts "to impose a reduced sentence" *only* for "the covered offense[.]"  § 404(b), 132 Stat. at 5222.  If Congress had wanted to give district courts broader authority to reduce all the sentences in a single judgment, it would have said as much.  But it did not.  And we must respect its choice.

My colleagues agree with this reading in part.  They recognize that the First Step Act does not give district courts complete freedom to reduce sentences for noncovered offenses imposed in the same case as a covered offense.  But they interpret the Act to allow district courts to reduce the sentence for *some* noncovered offenses under the "sentencing package" doctrine.  This doctrine recognizes that sometimes a district court's sentence on one count affects its sentence on another count.  *See Dean v. United States*, 581 U.S. 62, 68–69 (2017).  Suppose a court chooses a 10-year sentence for a drug offense because it also imposed a 5-year consecutive sentence for a firearm offense and believed that a 15-year term was the proper total punishment for the defendant's conduct.  *Cf. Pasquarille v. United States*, 130 F.3d 1220, 1221 (6th Cir. 1997).  Suppose further that an appellate court later overturns the firearm conviction.  *Cf. id.* Should the appellate court keep the drug sentence intact even though the record leaves no doubt that the district court would have imposed a 15-year sentence if it had convicted the defendant of only the drug offense?  No, the sentencing-package doctrine permits the appellate court to vacate the sentences for both crimes and remand for a general resentencing.  *See Greenlaw v. United States*, 554 U.S. 237, 254 (2008).  According to my colleagues, the First Step Act incorporated this doctrine.

No matter how wise as a policy matter, though, I struggle to see any reading of § 404(b) that permits this Solomonic compromise.  My colleagues agree that the word "sentence" in the First Step Act means "punishment" rather than "judgment."  But they say that the word punishment "can encompass imprisonment imposed for multiple convictions."  Yet what about § 404(b)'s reference to "a" *single* identifiable "sentence," not multiple sentences?  And what about the background principle that district courts impose two sentences for two offenses in multicount cases?  How can the word "sentence" be read to give the district court the power to reduce not just one sentence but two?  Besides, the majority is mistaken to suggest that § 404(b)'s limitation to "covered offenses" arises from the word sentence.  It arises from the text

identifying the *specific* sentence at issue: "[a] court that imposed a sentence *for a covered offense* may . . . impose a reduced sentence as if" the Fair Sentencing Act were in place "at the time *the covered offense* was committed." § 404(b), 132 Stat. at 5222 (emphases added). It is this repeated "covered offense" language that restricts a court's ability to reduce sentences "other than those imposed for violations of a 'covered offense.'" *United States v. Martin*, 974 F.3d 124, 138 (2d Cir. 2020).

My colleagues respond that the phrase "sentence for a covered offense" can be read to cover a single sentence "for both a covered and non-covered offense." I agree that *if* a district court imposed one sentence for two offenses, the court could reduce the sentence if one of the offenses was covered. But the court would have erred by issuing an improper *general sentence*. Few such sentences will exist. *Cf. United States v. Vieux*, 2024 WL 4708115, at *2–3 (11th Cir. Nov. 7, 2024) (per curiam). And the district court in these four appeals did not make this mistake. It imposed independent life sentences for the defendants' drug and murder convictions.

Examining § 404(b)'s words in isolation, my colleagues next note that the *specific phrase* "impose a reduced sentence" does not contain the covered-offense modifier at the start and end of the subsection. As I said, though, this modifier also applies to that phrase under a natural reading of the *whole provision*. And if I am mistaken about this restriction, how are there *any* limits on the sentences that the district court may reduce? Why can't the court reduce a sentence for a noncovered (and nonrelated) offense too? I do not see how we can plausibly read the phrase "impose a reduced sentence" to include a sentence for a noncovered offense affected by the sentence for the covered one without also including sentences unrelated to the covered offense.

My colleagues respond that they can incorporate the sentencing-package doctrine into § 404(b) because we must interpret the First Step Act "against the backdrop of existing law." *McQuiggin v. Perkins*, 569 U.S. 383, 398 n.3 (2013). I agree that we should read background principles into statutes that are silent on them. *See Perttu v. Richards*, 605 U.S. 460, 468 (2025). For example, we may assume that a federal law adopts "well established" principles of claim and issue preclusion even if the law says nothing about preclusion. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). But I am dubious that the sentencing-package

doctrine (mentioned only sporadically by the Supreme Court) qualifies as that type of principle. Indeed, the Third Circuit has expressed uncertainty over whether the doctrine should even apply when (as in this case) a court vacates only one of a defendant's *sentences* without vacating the *conviction* for that sentence. *See United States v. Grant*, 9 F.4th 186, 200 (3d Cir. 2021) (en banc).

In any event, we should not incorporate a background principle into a law when the law's text shows that Congress departed from the principle. *See Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 176 (2014). And the sentencing laws are not silent on a court's power to reduce an already imposed sentence. To the contrary, they start with the baseline rule that a "court may *not* modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c) (emphasis added). They then list narrow exceptions. As relevant here, courts may modify a sentence when the modification is "expressly permitted by statute[.]" *Id.* § 3582(c)(1)(B); *see Martin*, 974 F.3d at 138–39. District courts thus may modify a sentence only if the First Step Act *expressly* allows the modification. The Act grants this express permission for covered offenses. But it lacks any express permission for noncovered offenses (which is why my colleagues resort to background principles). Yet the baseline ban should instead continue to apply to noncovered offenses: a "court may not modify" the sentences for these offenses. 18 U.S.C. § 3582(c).

In this respect, the First Step Act differs from the other statute on which my colleagues rely: the one that permits defendants to seek postconviction relief. *See* 28 U.S.C. § 2255(a). The circuit courts have read § 2255 as authorizing a district court to resentence a defendant on all convictions if the court overturns just one of the convictions. *See Pasquarille*, 130 F.3d at 1222 (citing cases). Yet "[t]he plain language of § 2255" authorizes this type of general resentencing. *United States v. Davis*, 112 F.3d 118, 121 (3d Cir. 1997). When a court finds a sentence illegal, § 2255 indicates that the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). So it allows a court to vacate the entire "judgment" and "resentence" the defendant—not just "correct" the specifically problematic sentence. *Id.*; *see United States v. Augustin*, 16 F.4th 227, 231–32 (6th Cir. 2021). The First Step Act, by contrast,

contains no similar text authorizing a general resentencing. We have already made this precise point when rejecting a defendant's reliance on the sentencing-package doctrine in another case. *See United States v. Smith*, 958 F.3d 494, 498–99 (6th Cir. 2020); *see also United States v. Alexander*, 951 F.3d 706, 708–09 (6th Cir. 2019) (order). If anything, then, the different text across these two statutes confirms that the First Step Act does not allow district courts to reduce the sentences for noncovered offenses.

For all these reasons, I agree with the three circuit courts that have rejected a defendant's attempt to use the sentencing-package doctrine to obtain lower sentences for noncovered offenses. *See United States v. Gladney*, 44 F.4th 1253, 1262–63 (10th Cir. 2022); *United States v. Young*, 998 F.3d 43, 55 (2d Cir. 2021); *United States v. Baptiste*, 834 F. App'x 547, 550 (11th Cir. 2020) (per curiam). These courts have explained that district courts impose a unique sentence for each offense in a multicount case and that the First Step Act permits a court to reduce only one of those sentences: the one for the covered offense. *See Young*, 998 F.3d at 55. Similarly, they have recognized that the sentencing-package doctrine does not provide the express authority required for a district court to modify a previously imposed sentence. *See Baptiste*, 834 F. App'x at 550.

By comparison, I disagree with the two circuits that have used the sentencing-package doctrine to permit sentence reductions for noncovered offenses. *See United States v. Richardson*, 96 F.4th 659, 665–67 (4th Cir. 2024); *United States v. Hudson*, 967 F.3d 605, 610–11 (7th Cir. 2020). These courts treat separate sentences "as a single, aggregate term of imprisonment" under the First Step Act. *Hudson*, 967 F.3d at 611 (citing 18 U.S.C. § 3584(c)). But the statute on which they rely for this view provides that multiple sentences should be treated as a single sentence *only* "for administrative purposes," not for substantive purposes. 18 U.S.C. § 3584(c). And it is obvious that the reduction of a sentence does not qualify as an "administrative" task. *Cf. United States v. LaBonte*, 520 U.S. 751, 758 n.4 (1997). This law thus does not support this approach.

One last point. I recognize that the government's briefing in these appeals has adopted my colleagues' sentencing-package approach to § 404(b) rather than my own interpretation. But the proper interpretation of the law "cannot be left merely to the stipulation of parties." *Young v.*

*United States*, 315 U.S. 257, 259 (1942); *United States v. Jones*, 53 F.4th 414, 417 (6th Cir. 2022).  And I do not find it advisable to ignore one side of a circuit split on a legal question simply because the government does not advocate for that side.  If this question ever reaches the Supreme Court, I have no doubt that the Court will consider whether to adopt my view.  In *Terry*, for example, the government conceded that a defendant qualified for relief under the First Step Act despite unambiguous language barring that relief.  *See* 593 U.S. at 492.  The Court did not simply accept the government's reading of the Act.  It instead adopted the plain-text reading that only a court-appointed amicus had proposed.  *Id.* at 492–95.  I would follow a similar plain-text reading here.

## III

Yet these appeals do not even require us to conclusively reject the sentencing-package reading of § 404(b).  The record leaves no doubt that the district court did not "package" the life sentences for the defendants' covered drug offenses with the life sentences for their noncovered murder offenses.  So even if the sentencing-package doctrine permitted a district court to reduce the sentence for a noncovered offense, that doctrine would not help the defendants.  *Cf. United States v. Smith*, 104 F.4th 314, 334 (D.C. Cir. 2024).

Courts that have adopted the sentencing-package doctrine require defendants to show that the sentences for the covered and noncovered offenses were "interdependent."  *Pasquarille*, 130 F.3d at 1222; *see United States v. Curtis*, 66 F.4th 690, 694 (7th Cir. 2023).  In other words, the term of years that the court picked for the covered offense must have affected the term of years that it picked for the noncovered one.  *See Curtis*, 66 F.4th at 694–95.  This effect might exist if, for example, the district court explained at sentencing that it would vary below the advisory guidelines range for one conviction because of a mandatory minimum sentence for another one.  *See Dean*, 581 U.S. at 71; *cf. Maxwell v. United States*, 617 F. App'x 470, 479–80 (6th Cir. 2015).  But it would not exist if the district court believed that it could not consider the sentence for one offense when determining the sentence for the other one.  *See Augustin*, 16 F.4th at 232.

The defendants here cannot show that their drug-conspiracy sentences affected their murder sentences.  Like the current guidelines, the guidelines at the time of the defendants'

original sentencing in the 1990s imposed a base offense level of 43 for the murder offenses. U.S.S.G. § 2A1.1. That offense level triggered a guidelines sentence of life imprisonment. And the district court sentenced the defendants before the Supreme Court had told courts to treat the guidelines as advisory. *See United States v. Booker*, 543 U.S. 220, 245 (2005). So the district court believed that it had to impose a "mandatory life sentence" for the murders, Dale Sentencing Tr., R.1569, PageID 6913, because it had "no discretion" to vary from the guidelines, Brown Sentencing Tr., R.1680, PageID 11761. As a result, these appeals are simple: the murder offenses triggered a mandatory life sentence apart from the drug offenses. And the district court would have imposed life sentences for the murders no matter the sentences it imposed for the drug offenses. The drug sentences thus "played no role" in the murder sentences. *Augustin*, 16 F.4th at 233.

Precedent from other circuits confirms this point. Two courts have held that an intentional killing in furtherance of a continuing criminal enterprise did not have the required connection to a covered drug offense to permit relief under the sentencing-package reading of the First Step Act. *See Smith*, 104 F.4th at 334; *United States v. Junius*, 86 F.4th 1027, 1028–29 & n.1 (3d Cir. 2023). As the D.C. Circuit explained, the defendant's sentences for his covered drug offenses could not have affected the life sentences for his noncovered murder offenses because "the then-mandatory Sentencing Guidelines required the district court to impose a life sentence for" those murders. *Smith*, 104 F.4th at 334. Identical logic forecloses the defendants' arguments in these appeals.

Indeed, Dale, Polk, and Gordon offer no theory under which their life sentences for their drug offenses could have affected their life sentences for their murder offenses. For his part, Brown notes that the district court grouped his drug and murder convictions together when determining his guidelines range. And he cites the Seventh Circuit's suggestion that this type of "grouping" can show the required connection between two offenses. *Curtis*, 66 F.4th at 694. Yet the government responds that the court wrongly grouped these two offenses because the guidelines "[s]pecifically exclude[]" murder from grouping. U.S.S.G. § 3D1.2. (The crimes were not grouped for the other defendants.) But I would not get into this guidelines debate. Brown does not explain why this grouping would help him. For example, the drug offense did

not bump up what would otherwise have been a term-of-years sentence for the murder conviction into a life sentence. Rather, the murder conviction triggered a mandatory life sentence apart from the drug conviction. So if the jury had convicted Brown of murder alone, he would still be serving his life sentence. Why should the law treat him better simply because the jury convicted him of *both* a murder *and* a drug conspiracy? I would not read the First Step Act to authorize that strange result.

To be clear, a district court imposing a new sentence today for an eligible covered offense may vary from the guidelines range even if the court imposed the original sentence before *Booker* when courts still treated the guidelines as mandatory. *See United States v. Flowers*, 963 F.3d 492, 500 n.6 (6th Cir. 2020); *see also United States v. Price*, 44 F.4th 1288, 1295 (10th Cir. 2022). But the sentencing-package question at issue here concerns the *eligibility* of a noncovered offense—not the *discretionary* choice over which new sentence to pick. And the answer to that question turns on whether the original sentencing judge based the original sentence for the noncovered offense on the separate sentence for the covered one. The "then-mandatory" nature of the guidelines can help show the lack of a connection between the two. *See Smith*, 104 F.4th at 334.

The majority opts not to undertake this sentencing-package analysis now and finds the district court better positioned to do so. I do not see why. The judge who oversaw the defendants' motions under the First Step Act is not the same judge who imposed the original sentences. And we have traditionally treated eligibility questions—such as the question whether a court has the power to reduce the sentence for a noncovered offense—as raising legal issues subject to de novo review. *See United States v. Boulding*, 960 F.3d 774, 778 (6th Cir. 2020); *United States v. Curry*, 606 F.3d 323, 327 (6th Cir. 2010). That is why other circuit courts have engaged in this sentencing-package analysis themselves. *See, e.g.*, *Curtis*, 66 F.4th at 694–95. I would do the same.

All told, the First Step Act does not permit the defendants to reduce the life sentences that they received for committing murders. I thus would reverse the district court outright rather than remand for further proceedings under the First Step Act. I respectfully dissent.